**STATE of Minnesota, Appellant,**

v.

**Daniel William OLSON, Respondent,**

**and**

**STATE of Minnesota, Appellant,**

v.

**Robert Peter CUNDY, Respondent.**

**Nos. 82–180, 82–300.**

Supreme Court of Minnesota.

Oct. 11, 1982.

Warren Spannaus, Atty. Gen. and Gary Hansen, Sp. Asst. Atty. Gen., St. Paul, Alan L. Mitchell, County Atty., John De Santo, Asst. County Atty., Duluth, for State of Minnesota 82–180.

Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for State of Minnesota 82–300.

Wesley Martins, Indian Legal Assistance Program, Duluth, for Olson 82–180.

Douglas W. Thomson and Paul C. Engh, St. Paul, for Cundy 82–300.

AMDAHL, Chief Justice.

These cases are appeals by the state from sentences below the minimum terms of imprisonment mandated by Minn.Stat. § 609.-11 (Supp.1981). Subdivision 5 of this statute requires minimum sentences of three years' imprisonment for certain offenses committed with a firearm. Subdivision 8, however, allows the prosecutor to file a motion for a reduced sentence. "When presented with the motion and if it finds substantial mitigating factors exist, the court shall sentence the defendant without regard to the mandatory minimum terms of imprisonment established by this section." Minn.Stat. § 609.11, subd. 8 (Supp.1981).

Defendant Olson was convicted by a jury of assault in the second degree with a dangerous weapon, for shooting a male victim in the leg during a neighborhood fracas. The trial judge sentenced defendant to a term of 54 months in prison, stayed execution of the sentence, and placed him on five years' probation with the condition that he spend the first year of probation at the Northeast Regional Corrections Center.

The fact that a firearm was involved in the offense triggered the application of the mandatory minimum term law, Minn.Stat. § 609.11 (Supp.1981) which has recently been amended (effective May 20, 1981) by the addition of subdivision 8. Subdivisions 5, 6 and 8 of the statute and section II.E. of the Minnesota Sentencing Guidelines are here important: ·

Subdivision 5 provides, so far as pertinent here:

> Any defendant convicted of an offense * * * in which the defendant * * * used * * * a firearm, shall be committed * * * for a mandatory minimum term of imprisonment of not less than three years * * *.

Subdivision 6 limits the release of the defendant from imprisonment:

> Any defendant convicted and sentenced as required by this section shall not be eligible for probation, parole, discharge, or supervised release until that person shall have served the full mandatory term of imprisonment * * *.

Subdivision 8 provides the only statutory procedure for avoiding the mandatory minimum term. That subdivision provides:

> Prior to the time of sentencing, the prosecutor may file a motion to have the defendant sentenced without regard to the mandatory minimum terms of imprisonment established by this section. The motion shall be accompanied by a statement on the record of the reasons for it. When presented with the motion and if it finds substantial mitigating factors exist, the court shall sentence the defendant without regard to the mandatory minimum terms of imprisonment established by this section.

Sentencing Guidelines section II.E. states:

> When an offender has been convicted of an offense with a mandatory minimum sentence of three years, the presumptive duration of the prison sentence should be 54 months * * *.[1]

1. The 54 month sentence becomes 36 months of actual imprisonment if the prisoner earns

Because the stay of sentence departed from the 3 year minimum term of imprisonment mandated by Minn.Stat. § 609.11, the judge filed a departure report listing his reasons as follow:

1. Substantial and compelling evidence at the Sentencing Hearing with respect to the overall excellent background and character of the defendant has been received, and is clear and convincing.

2. The circumstances of the fracas leading up to the criminal charges against the defendant clearly show that all or most of the participants, including the defendant, had been drinking and were under the influence, so that intent was quite questionable.

3. Substantial evidence to the effect that the defendant was acting in self-defense was produced at trial, including convincing evidence that the defendant was confronted with a group of potential adversaries numbering anywhere from five or six (as claimed by the prosecution) up to 50 or 70 (as estimated by the Duluth Police Department).

4. Substantial evidence was offered to the effect that the defendant was, in a misguided fashion, operating on the theory that he was attempting to quell a disturbance, and thus acting in a manner beneficial to society.

5. It is crystal clear to the undersigned that a lengthy period of incarceration at Stillwater for this individual would fly in the face of reason, and that the interests of society, and of the defendant, are far better served by departing from the guidelines in this particular case.

Strong mitigating factors also formed the basis for departure in another case before this Court. Defendant Cundy and victim Kathleen were married in 1959. Three children were born of the marriage. They were separated from September, 1978 to

"good time" credit.

September, 1979 and reunited for a year before separating again in September of 1980. The marriage was dissolved in April of 1981. Defendant began seeing another woman during the final phase of the proceedings but, after the dissolution, stopped seeing her in exchange for a promise from Kathleen that they would have an exclusive relationship.

On May 27, 1981, defendant, after seeing Kathleen arrive at her apartment building with another man, approached her and asked to speak with her. The man threatened the defendant who went to his car and got a loaded pistol from the glove compartment. Defendant and the other man struggled briefly, then defendant fired shots into Kathleen's car. One bullet struck her arm but did not seriously injure her. Defendant entered a plea of guilty to assault in the second degree (assault with a dangerous weapon), Minn.Stat. § 609.222 (1980).

Defendant asserted, in his confession, that he did not intend that any of the shots should strike Kathleen and the trial judge so found at the time of sentencing, stating that defendant's action was the product of "an acute, situational, and temporary loss of emotional control" by an otherwise law-abiding person. The trial judge also found that the defendant was not a danger to the community nor to his former wife. She testified that defendant was a good man, that she was not afraid of him and that sending him to prison would be "ridiculous." The three children reside with defendant. Two of them are in educational programs beyond high school and the youngest, age 18, plans to enroll in college upon completion of high school in 1982.

The trial judge determined that if defendant were sent to prison, Kathleen, who now lives in Bemidji, would have to sell the family home in the Twin Cities, which she does not wish to do, and the boys would not be able to continue living in the home while they were attending school and found that sending the defendant to prison would adversely affect the educational plans of the children. Being of the opinion that probation, not imprisonment, would best serve the interests of the defendant, his family and the public, the trial judge made a request to the county attorney to move, pursuant to Minn.Stat. § 609.11, subd. 8, for sentencing without regard to the mandatory term. The county attorney refused to do so.

The trial judge then sentenced the defendant to 54 months in prison but stayed the sentence for 10 years and placed the defendant on probation for that period of time, the first six months to be served in the Ramsey County Workhouse with immediate work release and with time off for good behavior. He ordered defendant to pay Kathleen $5,000 in reparations within three months of his release from the workhouse and to make full restitution for hospital, medical and other bills resulting from the assault. He also ordered defendant to participate in appropriate alcohol and psychological treatment following release from the workhouse and ordered that he not harass, injure or annoy Kathleen.

In a memorandum attached to his order the trial judge in the Cundy case stated:

> Subd. 8 was placed in Minn.Stat. 609.11 by the Senate Judiciary Committee in response to testimony of witnesses, including myself, who desired a "safety valve" to moderate the rigors of the minimum sentence law in domestic cases and others where substantial mitigating factors exist.
>
> The minimum sentence law is intended to deter or to incapacitate armed robbers and other desperadoes who commit crimes against members of the public at large.
>
> Crimes against family members differ from crimes against the public because punishing the offender in domestic cases may also punish the victim. This case is a classic example of the problem.
>
> This victim did not suffer serious or permanent bodily harm. The victim does not believe the defendant is a threat to her. The victim does not want the defendant sent to prison. If he is sent to prison, the victim may have to sell her family's home, evict her children, and in-

terrupt or terminate their education. She will be deprived of reparations for the fright which has been visited upon her and restitution for her damages.

Sending Peter Cundy to prison would be bizarre and Kafkaesque. Battered women deserve sympathetic treatment from the legal system. They do not deserve to have their situations made worse.

The court is of the opinion that Subd. 8 does not bar the court, in extraordinary cases, from taking note of substantial mitigating factors upon its own motion. This holding does not suggest that the courts may routinely disregard the minimum sentence law; rather to construe the law to prevent the prosecutor from having an unreviewable veto over the power of the court avoids constitutional issues which would otherwise exist, and is a common sense construction.

The issues before us are of first impression in this court and are: (1) did the trial judges have discretion to sentence the defendants without regard to the mandatory minimum term requirements of Minn.Stat. § 609.11; and (2) if not, is the statute unconstitutional?

This court, and the vast majority of other courts considering the issue, have determined that courts have no inherent authority to impose terms or conditions of sentence for criminal acts and that the power to prescribe punishment for such acts rests with the legislature. *State v. Osterloh,* 275 N.W.2d 578 (Minn.1978). Prior to the addition of subdivision 8 to Minn.Stat. § 609.11, we held, in *State v. Jonason* and *State v. Olson,* 292 N.W.2d 730 (Minn.1980), that where the legislature had mandated a minimum sentence without stay of execution or imposition, the courts have no authority to stay a sentence and impose probation.

The present cases come to us in a different posture. By subdivision 8, the legislature has granted authority to the court to sentence without regard to the mandatory minimum sentence requirements upon condition that the prosecutor move for such action and that the court finds "substantial mitigating factors" exist.

By major amendments to this statute in 1981, including enactment of subdivision 8, the legislature increased minimum sentences for certain offenses by two years.[2] In this legislative scheme, subdivision 8 was clearly intended to function as a safety valve in cases where such increased sentences were not warranted by the circumstances. This we find to be the paramount purpose of this subdivision. Its authors were indeed prescient; the two cases now before us illustrate the need for some mechanism by which relief can be granted in unusual circumstances.

The state argues on appeal that subdivision 8 also expresses an intent of the legislature to put into the hands of the prosecutor alone the authority to initiate consideration of sentencing below the minimum, and that under this statute the courts may not act except upon motion of the prosecutor. Although this may be a reasonable interpretation of the language of the subdivision, we believe that it constitutes a minor condition rather than the primary purpose for its enactment.

The question then becomes: Can the legislature, having granted authority to the courts to sentence without regard to the mandatory minimum provisions of section 609.11, condition that authority upon a discretionary act of the prosecutor?

 The power to define the conduct which constitutes a criminal offense and to fix the punishment for such conduct is vest-

**2.** Prior to the 1981 amendments, subdivision 1 had mandated a one-year minimum term of imprisonment for *use* of a dangerous weapon or *possession* of a firearm when committing certain enumerated offenses. The second and subsequent of such convictions required a three year sentence. These sentences were increased in 1981 to a minimum of three years' imprison-

ment for certain offenses "in which the defendant or an accomplice * * * used, whether by brandishing, displaying, threatening with, or otherwise employing, a firearm * * *." Minn. Stat. § 609.11, subd. 5 (Supp.1981). For second and subsequent convictions, the sentence was increased to 5 years.

ed in the legislature. *State v. Meyer*, 228 Minn. 286, 37 N.W:2d 3 (1949). *See also People v. Navarro*, 7 Cal.3d 248, 102 Cal. Rptr. 137, 497 P.2d 481 (1972). However, the imposition of the sentence within the limits prescribed by the legislature is purely a judicial function. *People v. Navarro*, 7 Cal.3d 248, 102 Cal.Rptr. 137, 497 P.2d 481 (1972); *State v. LeCompte*, 406 So.2d 1300 (La.1981). The legislature may authorize the court to exercise broad discretion in the imposition of sentences by providing for the fixing of sentences within prescribed minimum and maximum years. Or the legislature may restrict the exercise of judicial discretion in sentencing, such as by providing for mandatory sentences; and it may grant an administrative body the authority to supervise a convicted person, either within or without a penal institution. It may also grant the court power to suspend a sentence and may limit such power to certain cases and deny it as to others. These are but a few of the functions performed by the courts within the limits prescribed by the legislative branch. *See State v. Meyer*, 228 Minn. 286, 37 N.W.2d 3 (1949). But once the legislature has prescribed the punishment for a particular offense it cannot, within constitutional parameters, condition the imposition of the sentence by the court upon the prior approval of the prosecutor. Minn.Const. art. III, § 1.

The limitation on a prosecutor's exercise of the judicial function is inherent in the separation of powers doctrine and is illustrated by three decisions of the California Supreme Court. In *People v. Tenorio*, 3 Cal.3d 89, 89 Cal.Rptr. 249, 473 P.2d 993 (1970), the Supreme Court of California held that a provision of the Health and Safety Code which required approval of the prosecutor in order for the court to dismiss a prior conviction violated the separation of powers doctrine by vesting in the prosecutor the power to foreclose the exercise of an admittedly judicial power. In *Esteybar v. Municipal Court*, 5 Cal.3d 119, 95 Cal.Rptr. 524, 485 P.2d 1140 (1971), the defendant had been charged with possession of marijuana, an offense which in the absence of any prior felony convictions may be treated as either a felony or a misdemeanor. The statute, however, dictated that the magistrate could proceed with the offense as a misdemeanor only after first obtaining the consent of the prosecutor. The California court found that this statute violated the separation of powers doctrine, stating among other reasons:

> Under our system of separation of powers, we cannot tolerate permitting such an advocate [the prosecuting attorney] to possess the power to prevent the exercise of judicial discretion as a bargaining tool to obtain guilty pleas.

*Id.*, 95 Cal.Rptr. at 528, 485 P.2d at 1144. The *Esteybar* court concluded that the defendant was: "entitled to have an independent determination of whether he should be held to answer on a felony or a misdemeanor, and this is not possible when the exercise of judicial discretion depends on the 'pleasure of the executive.' " *Id.* (citation omitted). *People v. Superior Court*, 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405 (1974), involved the validity of a statute that gave to the prosecutor the power to veto a decision of the trial judge to order a defendant who was charged with a narcotic offense to be diverted into a pretrial treatment program. The Supreme Court of California, relying in part on *Esteybar* and *Tenorio*, held that the disposition of the charge was a judicial function and the statute violated the separation of powers doctrine.

The Supreme Court of Louisiana employed a saving construction to uphold a similar penal statute which otherwise would have violated the separation of powers doctrine. *State v. LeCompte*, 406 So.2d 1300 (La.1981). This statute allowed the sentencing court, upon motion of the prosecutor, to reduce or suspend the sentence of a convicted defendant who provided substantial assistance in the identification, arrest or conviction of other parties. Relying in part on the California cases discussed above, the court stated:

> If the trial court's decision whether to reduce or suspend the sentence is conditioned upon the district attorney's arbi-

trary discretion, \* \* \* the consequent sentencing (reduced or not, suspended or not) is at least as much the discretionary choice of the district attorney as that of the trial judge. Actually it is more so the choice of the district attorney if his motion is an outset requirement in order to permit the sentencing judge's considering a reduced or suspended sentence. Under Louisiana's constitutional separation of powers, the district attorney, a member of the executive branch, should have no role in sentencing, an obvious judicial function.

406 So.2d at 1311. However, the Louisiana statute on its face was susceptible of two reasonable interpretations, and the court chose to interpret that law as specifically giving to the courts as well as the prosecutor the discretion to reduce or suspend the prescribed sentence. The constitutional issue was thereby avoided.

█ We find the reasoning of the Louisiana court persuasive, and would add to it our own observation that the prosecutor is not only a member of the executive branch, but an advocate as well. His or her attention throughout the criminal trial is focused on achieving conviction, and appropriately so. But we expect too much when we look to the prosecutor alone for an evenhanded assessment of whether mitigating factors may exist in cases that have been successfully prosecuted. The present appeals amply illustrate the inadequacy of such a limited mechanism; it is neither constitutional, nor practical in our adversary system of criminal justice.

Thus, while we are constrained to give effect to the paramount purpose of this subdivision, we are hampered by the unconstitutional condition attached to it. Because these two aspects of subdivision 8 are not severable from each other, we must seek to harmonize them or strike the entire subdivision. Well-established rules of statutory construction mandate the former course.

We start with the principle that "[a] statute is to be construed according to the legislative intent, which is to be sought in the language used, in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation." *Grudnosky v. Bislow,* 251 Minn. 496, 498, 88 N.W.2d 847, 850 (1958). The occasion and necessity for subdivision 8 was neither to enlarge the powers of the prosecutor nor to limit the prerogatives of the courts, but rather to moderate the effects of this harsher sentencing law. The consequence of failing to uphold this subdivision would be to remove the safeguard which the legislature has put in place. We do not believe the legislature would have intended such a result. "There is a presumption in favor of constitutionality. It is presumed that the legislature intended to keep within constitutional limits and enact a constitutional law." *Head v. Special School District No. 1,* 288 Minn. 496, 506, 182 N.W.2d 887, 894 (1970), *cert. den. sub nom., Minneapolis Federation of Teachers Local 59 v. Spannaus,* 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971); *see also State on Behalf of Forslund v. Bronson,* 305 N.W.2d 748, 751 (Minn.1981). Finally, the rule of strict construction to be applied in interpreting penal statutes requires that all reasonable doubts concerning the legislative intent be resolved in favor of the defendants. *State v. Haas,* 280 Minn. 197, 159 N.W.2d 118, 121 (1968).

It seems to us, therefore, that in order to effectuate its major purpose [3] subdivision 8 must be interpreted to give courts and prosecutors alike the power to initiate sentencing without regard to statutory minimums. If the legislature gives such power to the prosecutors, it must also give it to the courts. It cannot constitutionally do otherwise.

Our holding makes unnecessary a consideration of the issue of whether the prosecu-

---

**3.** "The courts may resort to an implication to sustain an act, but not to destroy it." *Board of Managers v. City of Wilmington,* 237 N.C. 179, 74 S.E.2d 749, 755 (1953); *see also Erickson v. Sunset Memorial Park Association,* 259 Minn.

532, 543, 108 N.W.2d 434, 441 (1961) wherein this court construed a statute as impliedly excepting religious and fraternal cemeteries from the anti-discrimination provisions of the statute in order to keep it within the First Amendment.

tors' failure to file the motions constituted an abuse of discretion in these cases.

Affirmed.