**STATE of Minnesota, Respondent,**

v.

**Allen Lucious McKISSIC, Appellant.**

**No. C0–87–426.**

Court of Appeals of Minnesota.

Nov. 17, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Lisa A. Berg, Asst. Co. Atty., Minneapolis, for respondent.·

C. Paul Jones, State Public Defender, Bradford Colbert, Asst. Public Defender, St. Paul, for appellant.

Heard, considered and decided by CRIPPEN, P.J., FOLEY and LANSING, JJ.

## OPINION

LANSING, Judge.

Allen McKissic appeals his conviction and sentence for second degree assault, contending the state failed to prove beyond a reasonable doubt that he had not acted in self-defense; that he was deprived of his right to a fair trial by the admission of evidence obtained as a result of his unconstitutional detention; and that the trial court should have departed dispositionally or durationally from the mandatory minimum sentence. We affirm.

## FACTS

The charges against Allen McKissic arose out of a shooting in the early morning hours of August 29, 1986. He had been drinking the previous evening at Moby Dick's, a bar located at Hennepin Avenue between Sixth and Seventh Streets in downtown Minneapolis. Trent Ruffin, the shooting victim, August Forrest and Forrest's girlfriend, Paschell Wilson, were also at Moby Dick's.

Testimony conflicted on the events which led to the shooting. Forrest and Wilson testified that the incident began as they left Moby Dick's, when a man they did not know began talking to Wilson. Forrest perceived the conversation as disrespectful, pulled Wilson away, and began arguing with the group. When they started "disrespecting" him, too, he punched one of them. Forrest testified that the group included McKissic, but it was not McKissic he punched. Wilson testified that McKissic was not standing directly with the group and didn't remember his being involved in the argument.

Ruffin left Moby Dick's at about the same time and walked toward the group. He saw Forrest, McKissic and another man arguing. He exchanged words with the other man, but not McKissic. Ruffin did not hit anyone, nor did he see any punches thrown. When he saw McKissic reach into his jacket, he told Forrest, "Let's go," and walked about 10 to 15 feet away. He then heard a shot and felt a sting and, when he

saw that he was bleeding, ran across the street to the City Center.

McKissic's version of the incident differs significantly. He testified that Ruffin and two other men came walking toward him while he was standing outside talking to a girl. She was not identified at trial, other than that she was not Paschell Wilson. McKissic sensed trouble when the men came at him, and he walked away but started fighting with Ruffin after Ruffin tried to throw a punch at him. A man named Zeek broke up the fight, and McKissic started down Hennepin toward Sixth Street to get away from Ruffin.

McKissic estimated he had gone 15–20 feet, when Ruffin and a man named Troy Jackson came after him. McKissic panicked, pulled a pistol out of his pocket and fired it to keep Ruffin away from him. Ruffin then ran across the street toward the City Center, and McKissic and the rest of the group ran down Hennepin.

Minneapolis Police Sergeant John Nosbusch, driving down Hennepin, heard the shot and saw this group running toward him. To Nosbusch, McKissic stood out from the group because he appeared to be trying to conceal something in his right hand, and he alone veered away when he saw the patrol car. His suspicions aroused, Nosbusch followed McKissic on foot. When he caught up with him, Nosbusch attempted to pat search McKissic, but was unable to complete the search because a group had gathered around them. Although Nosbusch felt some hard objects during his initial attempted search, he was not able to identify any of them because of the distraction. Nosbusch pushed McKissic through the crowd toward the car at gunpoint and got him into the back seat, which was secured by a plexiglass window and steel plating.

As Nosbusch started to drive away, an assistance call came over the radio for a shooting with a victim at the City Center. Nosbusch drove the half-block to the City Center, locked McKissic in the car and went in. Nosbusch remained inside for 15–20 minutes. He helped disperse the crowd around the victim, learned that the suspected assailant's name was Allen McKissic, and attempted to identify possible witnesses. Nosbusch returned to his car, obtained McKissic's name and assisted while a witness identified McKissic as the man who had shot Ruffin. Nosbusch and the other police officers then took McKissic out of the car, handcuffed him and placed him under arrest.

Nosbusch's subsequent search of the squad car turned up identification and .22 caliber ammunition under the back seat and a .22 caliber revolver under the front seat on the passenger side. Because Nosbusch had searched the car in accordance with standard procedure before he started his shift, and the car had not been left unlocked and unattended, the unchallenged inference is that these items were left there by McKissic.

After being advised of his Miranda rights, McKissic admitted that he had done the shooting, but claimed that he was defending himself. McKissic repeated this statement later that day to another police officer after receiving another Miranda warning.

At a Rasmussen hearing held mid-trial, the trial court denied McKissic's motion to suppress the physical evidence found in the car and his statements to the police. After requesting re-instruction on the elements of assault and self-defense, the jury returned a verdict of guilty. The trial court refused McKissic's motion for a durational or dispositional departure from the mandatory minimum sentence of 36 months. McKissic appeals the judgment of conviction and the sentence.

### ISSUES

1. Was the evidence sufficient to support a conviction of assault in the second degree?

2. Were McKissic's statements to the police and the physical evidence found in the squad car suppressible fruits of an unlawful arrest?

3. Did the trial court abuse its discretion in refusing to depart durationally or

dispositionally from the mandatory minimum sentence?

## ANALYSIS

### I

McKissic challenges the sufficiency of the evidence to support his conviction for second-degree assault, Minn.Stat. § 609.222 (1986), arguing that the state failed to prove beyond a reasonable doubt that he was not acting in self-defense when he shot Ruffin.

On review of an insufficiency claim, the issue is whether, viewing the evidence in the light most favorable to the verdict, the jury could reasonably have concluded beyond a reasonable doubt that the defendant was guilty of the crime charged. *State v. Daniels*, 361 N.W.2d 819, 826 (Minn.1985). The determination of the weight and credibility of the witnesses' testimony is left to the jury, and inconsistencies or conflicts in the testimony of state witnesses are not necessarily cause for reversal. *Id.* at 826–27.

■ The elements of self-defense in a criminal case are (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm and that the action taken was necessary to avert that danger; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger. *See State v. Johnson*, 277 Minn. 368, 373, 152 N.W.2d 529, 532 (1967). In addition, the amount of force used in self-defense must be limited to that which would appear to be necessary to a reasonable person under similar circumstances. *State v. Bland*, 337 N.W.2d 378, 381 (Minn.1983); Minn.Stat. § 609.06(3) (1986). Once self-defense is raised, the state has the burden of proving the nonexistence of one of those elements beyond a reasonable doubt. *State v. Spaulding*, 296 N.W.2d 870, 875 (Minn. 1980); *State v. Baker*, 280 Minn. 518, 522–23, 160 N.W.2d 240, 242–43 (1968).

■ McKissic argues that no evidence indicated that he was the aggressor in the altercation preceding the shooting and that the state did not disprove his honest and reasonable belief that his actions were necessary to avoid imminent bodily harm. He admitted, however, on cross-examination that he could have retreated, displayed the gun to frighten Ruffin, or fired it into the air rather than toward Ruffin.

The state need only prove the absence of one element of self-defense to sustain a conviction. Even if we discounted the state's evidence which supports the verdict, the jury could still conclude beyond a reasonable doubt that the amount of force used was unreasonable under the circumstances, or that there was a reasonable possibility of retreat. The jury's verdict was supported by sufficient evidence.

### II

McKissic argues that the physical evidence found in the car and his statements to the police were tainted by his unconstitutional arrest and should have been suppressed.

McKissic was stopped while running from the scene and detained in the squad car for 15–20 minutes before he was formally placed under arrest. Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police may stop a person for questioning if there is a reasonable suspicion that the person is engaged in criminal activity. The stop may include a weapons frisk if the officer has reason to be concerned about safety. *Id.* at 24, 88 S.Ct. at 1881. The permissible scope of such an intrusion depends on the circumstances which justified it in the first place. *Id.* at 20–21, 88 S.Ct. 1879–80. No rigid time limit for *Terry* stops has been imposed; rather, the issue is whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly. *United States v. Place*, 462 U.S. 696, 709, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983).

■ Although *Terry* allows temporary restraint based on reasonable suspicion, an individual cannot be arrested in the ab-

sence of probable cause. *State v. Weekes*, 312 Minn. 1, 250 N.W.2d 590 (Minn.1977). Thus, the scope of the detention is limited to that time necessary for the police officers to confirm or ease their suspicions, after which the individual must be released unless probable cause to arrest appears. McKissic asserts that Officer Nosbusch's failure to identify any weapons during the initial pat search should have vitiated his suspicions, thus requiring that he be released.

■ However, Nosbusch testified that he did feel hard objects during the search, but was unable to identify them because of the distraction of the crowd. At that point, his suspicions were neither confirmed nor vitiated, and his motive in bringing McKissic to the car was to preserve the status quo pending further investigation. Similarly, it was not unreasonable for Nosbusch to have forced McKissic to the car at gunpoint, given the location, the crowd, the gunshot, the late hour and his continuing suspicions. *See People v. Courtney*, 11 Cal.App.3d 1185, 1192, 90 Cal.Rptr. 370, 374 (1970) (police need not choose between continuing on-the-spot investigation despite risks to safety, or abandoning investigation altogether).

Although the length of McKissic's detention in the police car is troubling, by that time Nosbusch had learned that a shooting had occurred. This fact, combined with McKissic's earlier behavior, provides a reasonable basis to believe that a crime had been committed by McKissic. While the state does not argue that Nosbusch had probable cause to arrest at that point, the radio report would at least have made McKissic's continued detention more reasonable. As one noted scholar points out, transportation of a suspect for identification purposes

> "should be dependent upon knowledge that a crime has been committed" and impermissible when the defendant's conduct was suspicious but "there has not been any report of a crime" recently in the vicinity.

3 W. LaFave, *Search and Seizure* § 9.2(g), at 397–98 (2d ed. 1987) (quoting *People v. Bloyd*, 416 Mich. 538, 331 N.W.2d 447 (1982)).

In light of these facts and the seriousness of the offense, it was not unreasonable for Nosbusch to transport McKissic to the City Center to determine whether the shooting victim could identify his assailant. The detention, within the 20–minute limit suggested by the Model Code of Pre–Arraignment Procedure § 110.2(1) (1975), was not unduly prolonged. The trial court properly admitted evidence discovered as a result of the detention.

### III

Minn.Stat. § 609.11, subd. 5 (1986), provides for a mandatory three-year minimum sentence for crimes involving the use of a firearm. McKissic argues that the trial court should have imposed a sentence of 21 months stayed because of his zero criminal history score and his amenability to probation. He relies on *State v. Olson*, 325 N.W.2d 13, 19 (Minn.1982), in which the court construed Minn.Stat. § 609.11 to allow the sentencing of offenders without reference to the statutory minimum if strong mitigating factors exist. Among the reasons for departure in *Olson* were the facts that the participants had been drinking and the defendant had been acting in self-defense and attempting to quell the disturbance.

■ While *Olson* might be authority for upholding a departure in this case, refusals to depart from a presumptive sentence will only rarely be reversed on appeal. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). Although *Kindem* left the question open, a review of the case law reveals only one case in which an appellate court disturbed a presumptive sentence: *State v. Curtiss*, 353 N.W.2d 262, 263–64 (Minn.Ct.App.1984) (remanded for failure to consider reasons for departure).

■ Here the court considered and rejected McKissic's arguments for deviation. Furthermore, claims of abuse of discretion for failure to depart have been rejected when the claim rests on self-defense claims which were unclear, *State v. King*, 367

N.W.2d 599, 603 (Minn.Ct.App.1985), or not accepted by the jury, *State v. Smith,* 374 N.W.2d 520, 525 (Minn.Ct.App.1985). *See also State v. Montgomery,* 363 N.W.2d 869, 870 (Minn.Ct.App.1985) (no error in refusing to depart despite claim of self-defense and crime less serious than other crimes that can constitute the underlying felony).

Finally, we are not persuaded that McKissic's actions were "less severe" than the typical assault with a deadly weapon. Even if McKissic was not the initial aggressor, he carried a loaded gun and extra ammunition with him when he went out drinking and used it in a manner which the jury found to be unreasonable. Ruffin could have been more seriously injured, or killed. The fact that he was in the hospital for only three days does not mitigate the offense. That the episode occurred on a sidewalk full of people is more aggravating than mitigating, as an innocent bystander could have been injured. The trial court's refusal to depart durationally or dispositionally was not an abuse of discretion.

## DECISION

The evidence was sufficient to convict McKissic of second degree assault over his claim of self-defense, and the trial court properly rejected McKissic's motion to suppress. The trial court did not abuse its discretion in failing to depart dispositionally or durationally from the mandatory minimum sentence.

Affirmed.