**STATE of Minnesota, Appellant,**

v.

**Duane Nathaniel BARKER, Respondent.**

**No. A04–1453.**

Supreme Court of Minnesota.

Nov. 17, 2005.

John M. Stuart, State Public Defender, Susan J. Andrews, Benjamin Butler, Assistant Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Donna J. Wolfson, Assistant Hennepin County Attorney, Minneapolis, MN, for Respondent.

## OPINION

HANSON, Justice.

Respondent Duane Barker was convicted of possession of a controlled substance. The district court sentenced him under Minn.Stat. § 609.11 (2004) (providing for a mandatory minimum sentence of 36 months after a judicial finding of firearm possession during the commission of a predicate offense) to 36 months in prison. The court of appeals reversed the sentence as violating Barker's Sixth Amendment right to a jury trial based on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The state sought further review, arguing that sentencing under the statute is advisory and therefore exempted from *Blakely* by *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 750, 160 L.Ed.2d 621 (2005). In the alternative, the state argues that Barker's sworn admissions at his sentencing hearing satis-

fy the "*Blakely* admission exception" and thus permit enhancement. We affirm the court of appeals.

Officers from the Hopkins Police Department found Barker sleeping in the driver's seat of his car with the lights on and the motor running. While interviewing Barker, the officers observed a handgun in plain view on the front passenger seat within Barker's reach. They placed Barker under arrest after determining that he had outstanding warrants for his arrest and that he did not have a permit for the handgun. The officers searched Barker and found drug paraphernalia, marijuana, and what was later determined to be 2.08 grams of powder cocaine.

Barker was charged with one count of fifth-degree possession of a controlled substance committed while possessing a firearm, in violation of Minn.Stat. § 152.025, subds. 2(1), 3(a) (2004), and Minn.Stat. § 609.11, subd. 5(a). The firearm possession component subjected Barker to a mandatory minimum executed sentence of 36 months. Minn.Stat. § 609.11, subd. 5(a). Because Barker's criminal history score was zero, the presumptive sentence for the underlying controlled substance offense without the firearm enhancement was 1 year and 1 day stayed. Minn. Sent. Guidelines V, IV.

Barker's attorney argued that the possession of a firearm component was an element of the charged offense, and therefore Barker was entitled to a jury trial on that allegation. Although the district court agreed, it felt the "present state of the law" was otherwise so it denied his request. After his request for a jury trial on the sentencing factors had been denied, Barker waived his right to a jury trial on the issue of guilt, and submitted the matter to the court on stipulated facts. For convenience, the court proceeded to conduct a sentencing hearing on the issue of

the application of section 609.11 before adjudicating guilt.

Barker and both arresting officers testified at the sentencing hearing. Barker testified that he is not a drug dealer and admitted that he had the gun on his front passenger seat. He said he had the gun for "protection only." On cross-examination, Barker admitted that he owned the gun, that at one point while in the car he pulled it out from under the back seat, and that he could have grabbed and racked it "in a second" to "protect" himself. The essence of Barker's argument at the sentencing hearing was that the state did not prove that his possession of the firearm "increased the risk of violence" associated with the controlled substance offense. This is an additional finding that the district court must make before sentencing under section 609.11 where the firearm possession is merely constructive, as opposed to actual. *State v. Royster*, 590 N.W.2d 82, 85 (Minn.1999).

The district court found Barker guilty of fifth-degree possession of a controlled substance. In addition, the court found "beyond a reasonable doubt that the defendant had a loaded handgun in his possession on November 28, 2003, at the time he possessed the controlled substance." The court explained that although Barker was not a drug dealer, the firearm posed a "potential for serious violence." The court sentenced Barker to 36 months in prison.

The court of appeals reversed the sentence holding (1) sentencing pursuant to Minn.Stat. § 609.11 violated Barker's right to a jury trial under *Blakely v. Washington*, and (2) the *Blakely* admission exception did not apply because, although Barker admitted possession of the gun, he "did not admit that his possession of the gun increased the risk of violence of whatever crime he was then committing." *State v. Barker*, 692 N.W.2d 755, 757–60 (Minn. App.2005).

## I.

■ The first issue before us is whether the mandatory minimum sentencing provision in Minn.Stat. § 609.11 implicates Barker's Sixth Amendment right to a trial by jury. Questions of constitutional interpretation are issues of law that we review de novo. *Star Tribune Co. v. Univ. of Minn. Bd. of Regents*, 683 N.W.2d 274, 283 (Minn.2004). Minnesota statutes are presumed constitutional, and the "party challenging a statute * * * must demonstrate, beyond a reasonable doubt, that the statute violates a provision of the constitution." *State v. Grossman*, 636 N.W.2d 545, 548 (Minn.2001).

The United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Court subsequently applied this rule to sentencing guidelines, holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 124 S.Ct. at 2537. The Court determined that the presumptive sentence under the Washington Sentencing Guidelines was the maximum sentence authorized by the jury verdict and that sentence enhancements beyond this maximum, made pursuant to judicial fact-finding, violate the Sixth Amendment. *Id.* at 2538. Finally, in *Booker*, the Court clarified that *Blakely* does not apply to advisory sentencing guidelines that merely recommend, rather than require, the selection of particular sentences in response to differing sets of facts. *Booker*, 125 S.Ct. at 750.

We recently addressed the effect of this *Apprendi* line of cases on the Minnesota Sentencing Guidelines and the sentencing enhancements required by Minn.Stat. § 609.109 (2004). *State v. Shattuck*, 704 N.W.2d 131 (Minn.2005). Prior to 2005 statutory amendments to conform with *Blakely*, section 609.109 required that a court impose a 30–year sentence upon the conviction of certain sex offenses where it determined that the person has a previous conviction of other enumerated sex offenses and "the crime involved an aggravating factor that would provide grounds for an upward departure under the Sentencing Guidelines." Minn.Stat. § 609.109, subd. 4 (2004), *amended by* Act of June 2, 2005, ch. 136, art. 16, § 9, 2005 Minn. Laws 901, 1117. Shattuck challenged his 30–year sentence, which the district court imposed pursuant to section 609.109 after it found four aggravating factors. *Shattuck*, 704 N.W.2d at 134–35. Based on the jury verdict alone, Shattuck's presumptive guideline sentence was 161 months' imprisonment. *Id.* at 134.

We first noted that "because section 609.109, subdivision 4, expressly incorporates the procedures of the Sentencing Guidelines for upward durational departures, the constitutional validity of the statute necessarily implicates the constitutional validity of upward durational departures under the Sentencing Guidelines." *Id.* at 138. After recognizing the limitations on a sentencing judge's discretion to depart from the presumptive guideline sentence, we held that "like the sentencing guidelines systems at issue in *Blakely* and *Booker*, under the Minnesota Sentencing Guidelines imposition of the presumptive sentence is mandatory absent additional findings." *Id.* at 141. Accordingly, the "presumptive sentence prescribed by the Minnesota Sentencing Guidelines is the 'maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defen-

dant.' " *Id.* (quoting *Blakely*, 124 S.Ct. at 2537). We held that section 609.109 is unconstitutional because it authorizes upward durational departures from the presumptive guideline sentence "upon finding an aggravating factor without the aid of a jury." *Id.* at 142–43.

The mandatory minimum statute at issue here is slightly different from section 609.109 because instead of simply incorporating the aggravating factors of the Sentencing Guidelines, section 609.11 establishes separate factors that trigger its application. *See* Minn.Stat. § 609.11, subds. 4, 5 (use of a dangerous weapon or possession of a firearm during the commission of a predicate offense). But we see no basis to distinguish the two for Sixth Amendment purposes. As noted by the court of appeals in this case, because "[t]he mandatory minimum creates an *alternative* presumptive sentence * * * entirely determined by a judicial finding[,] * * * [it] functions the same as an aggravating factor by increasing what otherwise would be the presumptive sentence." *Barker*, 692 N.W.2d at 760.

The state argues that, unlike section 609.109 as addressed in *Shattuck*, the enhancements contemplated by section 609.11 are advisory, not mandatory. It relies on our decision in *State v. Olson*, 325 N.W.2d 13, 18–19 (Minn.1982), which held that the authority given to prosecutors to initiate sentencing without regard to the statutory minimum would violate separation of powers if the authority were not also given to the courts. But section 609.11, as interpreted in *Olson*, does not make the mandatory minimum sentence merely advisory. *Olson* simply recognized that judges had the same powers that the statute already gave to prosecutors: the power to "initiate sentencing without regard to statutory minimums." *Olson*, 325 N.W.2d at 19. And under the amend-

ments made to subdivision 8 of section 609.11 to conform to *Olson,* judges who wish to depart from the mandatory minimum sentence must justify that departure with "substantial and compelling reasons." Minn.Stat. § 609.11, subd. 8 (2004). In other words, the decision to apply the mandatory minimum sentence, like a decision to depart from the guideline presumptive sentence, requires judicial fact-finding. Such a requirement of judicial fact-finding renders the statute mandatory, not advisory. *Shattuck,* 704 N.W.2d at 141. Therefore we hold section 609.11 is unconstitutional to the extent that it authorizes the district court to make an upward durational departure upon finding a sentencing factor without the aid of a jury or admission by the defendant.

## II.

■ The state argues that Barker's sentence was constitutional because he admitted to the enhancement factor—possession of the handgun—in his sworn testimony at the sentencing hearing. Barker argues that because he invoked his right to a jury trial on the firearm possession component and his request for a jury trial was denied, his subsequent statements cannot be considered.

In *Blakely,* the Supreme Court said that the statutory maximum sentence for Sixth Amendment purposes is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."* *Blakely,* 124 S.Ct. at 2537 (emphasis in original). The Court has not explained the scope of this *"Blakely* admission exception."

Barker urges this court to follow the rule adopted by the court of appeals for the *Blakely* admission exception in *State v. Hagen,* 690 N.W.2d 155 (Minn.App.2004). After the sentencing hearing, the court sentenced Hagen to 216 months, an upward departure from the 144–month presumptive sentence. *Id.,* 690 N.W.2d at 157. The state argued that the enhancement was justified because it was based in part on Hagen's admission at the sentencing hearing that "his crime would have longstanding effects on the victim." *Id.* at 158. The *Hagen* court noted that because there is "no basis to distinguish a stipulation to an aggravating sentencing factor from a stipulation to an element of the offense," the defendant's admission to an aggravating factor is not effective unless the defendant also waived the right to a jury trial on the use of that factor in sentencing. *Id.* at 159. The court held that such a waiver must be supported in the same manner as a waiver of a jury trial on the elements of the offense; knowingly, voluntarily, and intelligently. *Id.* at 158–59.

We agree in concept with the court of appeals' determination that the waiver of the right to a jury trial on sentencing factors requires the same support as a waiver of the right to a jury trial on the elements of the offense. But we need not base our decision on that rationale because we conclude that any admission that Barker made after the erroneous denial of his request for a jury trial on sentencing factors was necessarily the product of that error and cannot be used to satisfy the *Blakely* admission exception.[1] Otherwise,

---

1. Although we find error in the district court's denial of Barker's request for a jury trial on sentencing factors, we are not suggesting that the court should or could have impaneled a jury. For this case, it is enough to say that the failure of the district court to provide a jury trial on sentencing factors, for whatever reason, violated Barker's Sixth Amendment right to a jury trial. Where there is no constitutional mechanism available to address an enhancement to the guideline presumptive sentence, the presumptive sentence must be imposed.

a defendant such as Barker is placed in an untenable position. If he stands by his position that he was entitled to a jury trial and does not testify at the sentencing hearing, he will have given up his constitutional right to present a defense on the sentencing factors. If, instead, he chooses to testify on the sentencing factors, he runs the risk that his testimony "implicitly" waived his right to a jury trial on those factors. Under the state's reasoning, each of these options would require Barker to give up a constitutional right, either the right to a jury trial or the right to present a defense.

For these reasons, we conclude that the denial of Barker's request for a jury trial on sentencing factors was error and that all sentencing proceedings following that denial were the product of that error and therefore cannot be considered. Stated another way, our reversal of the denial of Barker's request for a jury trial voids all proceedings that depended on that denial. Accordingly, the admissions made by Barker at the sentencing hearing following the denial of his request for a jury trial do not qualify under the *Blakely* admission exception.

The state argues that this conclusion is contrary to our holding in *State v. Leake*, 699 N.W.2d 312, 323–25 (Minn.2005). Following Leake's conviction of first-degree premeditated murder, the district court found he had been convicted in 1998 of a "heinous crime," which subjected him to a mandatory minimum sentence of life without the possibility of release under Minn. Stat. § 609.106 (2004). *Leake*, 699 N.W.2d at 319. In order to determine that his 1998 conviction of third-degree criminal sexual conduct was a "heinous crime," the district court had to find that "the offense was committed with force or violence." *Id.* at 321 (quoting Minn.Stat. § 609.106, subd. 1(3) (2004)). The court based that finding, in part, on admissions Leake made during

the plea hearing when he had waived his right to a jury trial, pleaded guilty to third-degree criminal sexual conduct, and testified to the factual basis for his plea. *Id.* at 322, 324. We recognized that these plea-hearing admissions were sufficient to support the *Blakely* prior conviction exception and affirmed the use of the 1998 conviction to enhance Leake's murder sentence. *Id.* at 323.

*Leake* is distinguishable both because of the time when Leake made his admissions and the context within which he made them. As to the time, Leake made these admissions in the criminal sexual conduct proceeding before his right to a jury trial on sentencing factors had arisen in the murder proceeding. Thus, the admissions were not the product of the erroneous denial of his right to a jury trial on sentencing factors in the murder case. As to context, Leake made these admissions as a part of a guilty plea which first required Leake to knowingly, intelligently and voluntarily waive his right to a jury trial. *See* Minn. R.Crim. P. 15.01.

Further, our decision in *Leake* was based primarily on *Blakely*'s prior conviction exception, which appears to incorporate its own admission exception. In *Shepard v. United States*, —— U.S. ——, 125 S.Ct. 1254, 1262–63, 161 L.Ed.2d 205 (2005), the United States Supreme Court addressed the use of admissions to support the *Blakely* prior conviction exception. The United States sought to enhance the defendant's sentence under a statute that mandates a minimum sentence for felons who have three prior convictions for violent felonies or serious drug offenses. *Shepard*, 125 S.Ct. at 1257–58. The Court had previously held that because some states have very expansive definitions of burglary, an attempted enhancement under this statute can only be based on a prior burglary conviction involving a build-

ing, not cars or boats. *Taylor v. United States*, 495 U.S. 575, 598–602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In *Shepard*, the Court concluded that a sentencing court can look to the indictment or information, jury instructions, or the plea agreement in the prior proceeding to determine whether the prior burglary conviction involved a building. *Shepard*, 125 S.Ct. at 1259–60. Because all of Shepard's prior burglary convictions were pursuant to guilty pleas that did not specify whether they involved buildings, the United States urged the district court to look to the police reports and complaint applications—documents that were not part of the record in the plea hearings on the factual basis for the three guilty pleas—to prove this additional fact. *Id.* at 1258.

Although resting its holding primarily on statutory interpretation grounds and not addressing the jury trial waiver issue, the Court did note a "serious [risk] of unconstitutionality" with the United States' proposal in light of the *Apprendi* line of cases. *Shepard*, 125 S.Ct. at 1262–63. Accordingly, it limited proof of a defendant's prior guilty plea—i.e. his admissions—to "the terms of the charging document, the terms of a plea agreement or *transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant,* or to some comparable judicial record of this information." *Id.* at 1263 (emphasis added). Although the Court has not further clarified the scope of the admissions that may be considered to satisfy *Blakely*'s prior convictions exception, *Shepard* sug-' gests that admissions to support *Blakely*'s prior convictions exception may not need to be precisely the same as those used to satisfy *Blakely*'s admissions exception when that exception is standing alone. Of course, we need not address that narrow issue here because the prior convictions exception is not presented here. But, we do conclude that the focus in *Leake* on the

prior convictions exception provides a further basis to distinguish it from the present case.

We hold that where a defendant requests and is denied a jury determination of a fact necessary to enhance the sentence beyond the range of the presumptive guideline sentence, any statements the defendant makes subsequent to that denial may not be considered for the purposes of the *Blakely* admissions exception.

### III.

■ The state in oral argument raised the issue of remedy should we affirm the court of appeals. The state argued that we should remand to the district court for resentencing, with directions that the district court impanel a jury to determine the sentencing factors required by section 609.11. The state suggested that the district court's authority to impanel a jury can be based on the inherent power of the court.

In *Shattuck*, we rejected the suggestion that the district court should use its inherent power to impanel a resentencing jury. We noted that although "[t]he authority to regulate matters of court procedure arises from the court's inherent judicial powers," this "authority extends only to its unique judicial functions." *Shattuck*, 704 N.W.2d at 147. And while imposing a sentence within the limits of punishment for criminal acts is a judicial function, we observed that the power to fix these limits lies with the legislature and we ultimately left to the legislature the task of amending the Minnesota sentencing scheme to comport with the requirements of *Blakely* and *Apprendi*. *Shattuck*, 704 N.W.2d at 147. "For us to engraft sentencing-jury or bifurcated-trial requirements onto the Sentencing Guidelines and sentencing statutes would require rewriting them, something

our severance jurisprudence does not permit." *Id.*

The state also asks us to find authority to empanel a sentencing jury on remand based on the 2005 amendments to Minn. Stat. § 244.10. The amendments authorize the district court to "impanel a resentencing jury" to determine "the existence of factors in support of an aggravated departure." Act of July 25, 2005, ch. 7, § 17, 2005 Minn. Laws, 1st Spec. Sess. 3059, 3079. But that section does not address the procedure for imposing a mandatory minimum sentence under section 609.11. *See* § 17. It applies solely to situations where the state seeks an aggravated departure under the sentencing guidelines, and not to mandatory minimum sentences.[2] And, importantly, the legislature did not simultaneously amend section 609.11, which continues to provide that

> the question of whether the defendant * * *, at the time of commission of an offense listed in subdivision 9, used a firearm * * * or had in possession a firearm shall be determined by the court on the record at the time of a verdict or finding of guilt at trial * * *.

Minn.Stat. § 609.11, subd. 7 (2004).

Finally, several other mandatory minimum statutes were amended in 2005 to provide for sentencing juries and bifurcated trials at resentencing hearings. Act of June 2, 2005, ch. 136, art. 2, § 6, art. 16, §§ 9–12, 2005 Minn. Laws 901, 923, 1117–19. These changes affect Minn.Stat. § 609.108 (2004) (relating to certain "patterned and predatory sex offenders"); Minn.Stat. § 609.109 (relating to certain repeat sex offenders; the statute at issue in *Shattuck* ); and Minn.Stat. § 609.1095 (2004) (relating to certain dangerous and repeat felony offenders). Art. 2, § 6; art. 16, §§ 9–12. Noticeably absent from this list is section 609.11. The maxim that the

expression of one thing indicates the exclusion of another persuades us that the legislature did not intend to authorize sentencing juries for sentences made under section 609.11. *See Harris v. County of Hennepin,* 679 N.W.2d 728, 731 (Minn. 2004); *Maytag Co. v. Comm'r of Taxation,* 218 Minn. 460, 463, 17 N.W.2d 37, 40 (1944) ("Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others.").

For these reasons, we find no legislative authorization to impanel a resentencing jury for the purpose of imposing an upward departure from the presumptive sentence pursuant to Minn.Stat. § 609.11. The judgment of the court of appeals is affirmed and the case is remanded to the district court for imposition of a sentence within the presumptive range.

Affirmed and remanded for resentencing.

---

**2.** In *Shattuck* we declined to express any opinion about the validity of these provisions.

704 N.W.2d at 148 n. 17. We similarly decline to do so here.