*7This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2208**

State of Minnesota,
Respondent,

vs.

James Brandon Ponthieux,
Appellant.

**Filed July 13, 2015
Affirmed
Larkin, Judge**

Itasca County District Court
File No. 31-CR-11-1530

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Muhar, Itasca County Attorney, Matti R. Adam, Assistant County Attorney, Grand Rapids, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Eric I. Withall, Assistant Public Defender, St. Paul, Minnesota (for appellant)


        Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Larkin, Judge.

**LARKIN**, Judge

In this probation-revocation appeal, appellant argues that the district court erred by failing to explain why it refused to execute only one of appellant's concurrent stayed prison terms for four counts of first-degree criminal sexual conduct, as appellant proposed, instead of his entire 360-month sentence. Because the district court satisfied the applicable caselaw requirements when revoking appellant's probation and did not otherwise abuse its broad discretion, we affirm.

## FACTS

Respondent State of Minnesota charged appellant James Brandon Ponthieux with eight counts of first-degree criminal sexual conduct in one criminal complaint, alleging that he had sex with his roommate's 14-year-old daughter on four occasions. Ponthieux reached a plea agreement with the state, under which he pleaded guilty to four counts of first-degree criminal sexual conduct in exchange for the state's agreement to support a stayed prison sentence, even though the sentencing guidelines called for an executed sentence. In January 2012, the district court sentenced Ponthieux to four concurrent prison terms of 144, 180, 360, and 360 months. Pursuant to the plea agreement, the district court granted a downward dispositional departure, stayed execution of each term of imprisonment for ten years, and placed Ponthieux on probation. The district court ordered one set of probationary conditions for all of the stayed prison terms. Those conditions required Ponthieux to complete sex-offender treatment, have no unsupervised contact with minor females, and not possess any type of pornographic material.

2

In August 2013, Ponthieux violated the conditions of probation by failing to complete or comply with the requirements of sex-offender treatment and by having unsupervised contact with a minor female. The district court imposed a sanction of 365 days in jail and continued Ponthieux on probation.

In April 2014, Ponthieux's probation officer filed a probation-violation report, alleging that Ponthieux once again violated the conditions of probation by failing to complete sex-offender treatment and by having unsupervised contact with a minor. In May, the probation officer filed an addendum to the report, alleging that Ponthieux possessed pornographic or sexually explicit material.

Ponthieux admitted that he violated probation by having unsupervised contact with a minor. After an evidentiary hearing, the district court found that Ponthieux also violated probation by failing to complete sex-offender treatment and by possessing pornography. The district court found that all three violations were intentional and inexcusable.

The state argued for revocation of probation and execution of Ponthieux's entire 360-month sentence. Ponthieux asked the district court to execute only one of his stayed prison terms. Specifically, Ponthieux argued that if he served a 144-month term of imprisonment, he could complete sex-offender treatment in custody, serve a "significant sentence," and upon release would "still have a significant sentence hanging over his head."

The district court noted that it had been hesitant to grant a downward dispositional departure because the presentence investigator opposed probation and because Ponthieux

3

displayed "limited, at best, acceptance of responsibility." The district court also noted that Ponthieux had been resistant, argumentative, and manipulative throughout the case. The district court highlighted the seriousness of Ponthieux's treatment failure and stated that his contact with minors was "even more serious." The district court noted that Ponthieux "hasn't even tried to comply with" the no-contact-with-minors condition. The district court acknowledged that its "only hesitation" was that "360 months is a really long time," but it nonetheless indicated that the decision to revoke was not "a close call." The district court explained its decision as follows:

> I do feel that, based on all the history of this case, that the need for confinement outweighs the presumption in favor of continued probation, that [Ponthieux] needs correctional treatment because the treatment without the correctional aspect of it is clearly not working, and would unduly depreciate the seriousness of the offenses, particularly the failure of treatment and even more so, as I said earlier, the contact with minors, just flaunting that condition of probation and maybe about the most important condition of probation, that he is a public safety risk and that he is not amenable to probation.
>
> The bottom line is, I cannot risk another [minor victim], [I] just can't do it.

The district court revoked Ponthieux's probation and executed his entire sentence. Ponthieux appeals.

**D E C I S I O N**

Ponthieux argues that "[t]he error below was the absence of findings on the record explaining why the district court rejected [his] proposed disposition of revoking a single 144-month sentence as opposed to the revocation of all four sentences totaling 360

4

months." Ponthieux further argues that "remand is required under *Modtland* because of the absence of explicit findings on why the court's goals could not be served by [his] proposed disposition."

In *Modtland*, the supreme court reaffirmed its holding in *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980), "that district courts must make the following three findings on the record before probation is revoked." *State v. Modtland*, 695 N.W.2d 602, 606 (Minn. 2005).

> First, courts must designate the specific condition or conditions of probation the defendant has violated. Second, courts must find the violation was inexcusable or intentional. Once a court has made findings that a violation has occurred and has found that the violation was either intentional or inexcusable, the court must proceed to the third *Austin* factor and determine whether the need for confinement outweighs the policies favoring probation.

*Id.* (citations omitted).

The supreme court stated that district courts "should refer" to the following American Bar Association Standards for Criminal Justice:

> Revocation followed by imprisonment should not be the disposition . . . unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
>
> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 607 (quoting *Austin*, 295 N.W.2d at 251). The supreme court explained that the "requirement that courts make findings under the *Austin* factors assures that district court judges will create thorough, fact-specific records setting forth their reasons for revoking probation." *Id*. at 608.

"A district court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 605 (quotation omitted). But whether the district court made required findings is a question of law, which is reviewed de novo. *Id*.

As support for reversal, Ponthieux relies on *State v. Johnson*, in which this court reversed the district court's decision to revoke probation because the decision was heavily based on the district court's misinterpretation of law. 743 N.W.2d 622, 626 (Minn. App. 2008). In *Johnson*, the district court reasoned that "[b]ecause Minnesota Statutes specifically limit the amount of time a district court may order a [d]efendant to serve in jail as a condition of probation to one year," it had "no choice but to revoke . . . probation." *Id*. at 624-25. On appeal, this court concluded that the applicable statute "neither states nor implies that there is a limit to the cumulative amount of local jail time a district court may impose as a consequence of probation violations" and that because "the district court relied so heavily on its erroneous interpretation of [the statute] when making its decision," remand was necessary "for resentencing in light of the correct interpretation" of the statute. *Id*. at 626.

Ponthieux argues, "[a]s in *Johnson*, the district court below could have declined to execute only a single sentence under the erroneous presumption that it could not do so."

6

But the record here does not suggest that the district court believed it could not revoke only one of Ponthieux's stayed prison terms. *Johnson* is therefore distinguishable.

Ponthieux does not cite any other authority to support his argument that the district court failed to comply with *Austin* and *Modtland* or otherwise made inadequate findings to support revocation of his entire sentence. We are not aware of any authority requiring a district court to make *Austin* findings regarding each count-based component of a sentence that is comprised of multiple concurrent stayed prison terms. In fact, Ponthieux concedes that the "district court made all of the appropriate findings, and supported them." We note that Ponthieux does not challenge the district court's decision to revoke his probation; he only challenges the decision to execute his entire sentence. *Austin* and *Modtland* do not address these circumstances. Those cases merely require district courts to make "fact-specific records setting forth their reasons for *revoking probation*." *Modtland*, 695 N.W.2d at 608 (emphasis added). The district court complied with that requirement. It was not required to make additional findings regarding why it revoked all, instead of some, of a sentence comprised of multiple concurrent stayed prison terms.

Ponthieux argues, "[t]his case is about the excessive incarceration of a man who is in need of correctional treatment." But "[t]he power to define the conduct which constitutes a criminal offense and to fix the punishment for such conduct is vested in the legislature." *State v. Olson*, 325 N.W.2d 13, 17-18 (Minn. 1982). Each component of Ponthieux's sentence is within the limits prescribed by the legislature. In fact, the law presumed that each prison term would be executed at the time of sentencing. Instead, the district court agreed to a downward dispositional departure and gave Ponthieux the

7

opportunity to remain in the community on probation. Unfortunately, Ponthieux failed to take advantage of that opportunity, and his probation violations triggered execution of his entire 360-month sentence. But that sentence—significant as it may be—ultimately stems from Ponthieux's four convictions of first-degree criminal sexual conduct. We therefore are not persuaded by Ponthieux's argument that "[t]he severity of the violations does not require execution of the entire 360-month sentence." *See* Minn. Sent. Guidelines III.B (2008) (stating that, when considering whether to revoke a stayed sentence, "[l]ess judicial forbearance is urged for persons . . . who were convicted of a more severe offense").

Moreover, although the district court did not explain why it refused to execute only a portion of Ponthieux's entire sentence, the record shows that the court considered the length of the sentence when deciding whether to revoke, noting that the court's "only hesitation" was that "360 months is a really long time." Ultimately, the district court indicated that its decision to revoke was not "a close call," despite the length of the sentence, concluding that Ponthieux is a public-safety risk and that he is not amenable to probation.

In conclusion, the district court did not erroneously omit findings required under *Austin* and *Modtland*, and it did not otherwise abuse its broad discretion by revoking Ponthieux's probation and executing his entire stayed sentence. We therefore affirm.

**Affirmed.**