**STATE of Minnesota, Respondent,**

v.

**Duane Nathaniel BARKER, Appellant.**

No. A04–1453.

Court of Appeals of Minnesota.

March 8, 2005.

Mike Hatch, Attorney General, St. Paul, and Amy Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Susan J. Andrews, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; MINGE, Judge; and WRIGHT, Judge.

## OPINION

TOUSSAINT, Chief Judge.

This expedited appeal is from a sentence imposed for fifth-degree controlled substance offense. *See* Minn.Stat. § 152.025, subds. 2(1), 3(a) (2002). Appellant presents a *Blakely* challenge to the sentence, which was enhanced under Minn.Stat. § 609.11, subd. 5 (2002), the firearm-enhancement statute. *See Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We reverse and remand.

## FACTS

Appellant Duane Barker was charged with fifth-degree controlled substance offense, committed while possessing a firearm. Police, responding to a call regarding a suspicious vehicle on November 28, 2003, found Barker, asleep or passed out, behind the wheel of the vehicle. The offi-

cers could see a handgun lying on the front passenger seat. The gun was later found to be loaded, although no bullet was actually chambered for firing.

The officers discovered that Barker had outstanding warrants for driving after suspension. When they frisked Barker, one of the officers found an electronic gram scale in his pants pocket. They also found suspected cocaine in his pants pocket, along with three suspected crack pipes and suspected marijuana. An inventory search of the vehicle revealed cocaine in the driver's side door, a knife also found there, and two bongs.

The complaint charged Barker with a single count of fifth-degree controlled substance crime, committed "while possessing a firearm," and therefore subject to a sentence enhancement under Minn.Stat. § 609.11.

Barker agreed to waive his right to a jury trial, submit to a stipulated-facts trial, and have a contested hearing on the firearm enhancement, the only contested issue. Although defense counsel expressed the opinion that possession of the firearm was an element of the offense rather than a sentencing enhancement, he noted that the district court had disagreed in chambers. The court, however, clarified that, although it felt Barker was entitled to a jury trial on the firearm-possession allegation, the "present state of the law" was otherwise.

Barker testified at the hearing that the gun was found on the front passenger seat and that the gun was his. Barker testified that he told police the gun was there "for my protection," because he was concerned for his safety. He denied telling police at the scene that the gun belonged to "Robert." Barker testified the gun was for "protection only," and admitted that it was right next to him on the passenger seat. He also testified, however, that he had pulled the gun out from underneath the back seat when he was looking for his cell phone.

The district court concluded that Barker possessed the handgun at the time he possessed the drugs. In sentencing Barker under section 609.11, the court stated that, although it did not believe Barker was a drug dealer, the possession of the handgun increased the potential for violence, and, therefore, sentencing under Minn.Stat. § 609.11 was appropriate. The court sentenced Barker to 36 months in prison. This appeal followed.

## ISSUES

1. Did the sentence enhancement for possession of a firearm under Minn. Stat. § 609.11, subd. 5 (2002) violate appellant's right to a jury trial under *Blakely?*

2. If so, what is the appropriate remedy?

## ANALYSIS

### I.

Barker argues that the enhanced sentence imposed on him based on the judge's findings violates the Supreme Court's holding in *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In reviewing a constitutional challenge to a statute, this court applies a de novo standard of review. *State v. Wright,* 588 N.W.2d 166, 168 (Minn.App.1998), *review denied* (Minn. Feb. 24, 1999).

■ The presumptive sentence for fifth-degree controlled substance crime, given Barker's criminal history score, would have been one year and one day, stayed. Instead, he was sentenced under Minn. Stat. § 609.11, subd. 5 (2002), to an executed sentence of 36 months. Barker argues that this upward dispositional and dura-

tional enhancement, violates his Sixth Amendment right to a jury trial under *Blakely*.

In *Blakely*, the Supreme Court held that the sentencing judge may not impose a sentence greater than "the maximum sentence [that may be imposed] solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, —— U.S. at ——, 124 S.Ct. at 2537. In *Blakely*, the Court held that an upward durational departure (or "exceptional sentence," in the Washington state law's terminology) could not be imposed based on judicial findings. *Id.* at 2537–38.

The Minnesota Supreme Court has held that *Blakely* applies to upward durational departures under the Minnesota Sentencing Guidelines. *State v. Shattuck*, 689 N.W.2d 785 (Minn.2004) (ordering additional briefing on appropriate remedy); *see also State v. Conger*, 687 N.W.2d 639 (Minn.App.2004), *review granted* (Minn. Dec. 22, 2004) (stayed pending decision in *Shattuck* ). This court, however, has held that *Blakely* does not apply to upward dispositional departures in Minnesota. *State v. Hanf*, 687 N.W.2d 659 (Minn.App. 2004), *review granted* (Minn. Dec. 14, 2004).

■■ The increased sentence imposed on Barker in this case, however, was not a guidelines departure as such, either durational or dispositional. The statute at issue provides:

> [A]ny defendant convicted of [a qualifying offense] . . . in which the defendant or an accomplice, at the time of the offense, had in possession or used . . . a firearm, shall be committed to the commissioner of corrections for not less than three years, nor more than the maximum sentence provided by law.

Minn.Stat. § 609.11, subd. 5(a). The statute does not reference the sentencing guidelines nor describe this enhancement as a "departure." Instead, the statute establishes a mandatory minimum.

The guidelines incorporate mandatory-minimum statutes like section 609.11 by, in general, using the mandatory minimum as the presumptive sentence, unless the presumptive term shown in the guidelines grid is longer. Minn. Sent. Guidelines II.E. The guidelines also provide that, whatever the presumptive disposition would otherwise have been, when an offender is sentenced under section 609.11, the presumptive disposition is execution of the sentence. *Id.*

Opinions of both the United States and Minnesota Supreme Courts have rejected the argument that *Apprendi* applies to mandatory minimum sentencing provisions. But those cases are not persuasive here in light of the guidelines provision making the section 609.11 mandatory minimum the presumptive sentence.

Our supreme court held in *State v. Smith*, 669 N.W.2d 19, 33 (Minn.2003), that *Apprendi* did not apply to the mandatory-minimum provision in the heinous-offense statute. In that case, the defendant, who was convicted of first-degree murder, faced a life sentence, but under the heinous-offense statute, instead of being eligible for release after 30 years, he was sentenced to life without the possibility of release. *See id.* The supreme court held that this did not increase the maximum sentence that could be imposed, which remained life, but merely changed the minimum term that the defendant would serve. *Id.* Therefore, *Apprendi* did not apply. *Id.*

The United States Supreme Court, also applying *Apprendi*, held in *Harris v. United States*, 536 U.S. 545, 568, 122 S.Ct. 2406, 2420, 153 L.Ed.2d 524 (2002), that a mandatory-minimum sentencing provision triggered when the defendant "brand-

ished" a weapon during the offense, did not violate the defendant's right to a jury trial under *Apprendi. Harris* is superficially similar to this case because it also involved a firearm-enhancement provision establishing a mandatory-minimum sentence. It is different, however, because the minimum sentence mandated was one "the judge could have imposed absent the finding." *Id.* at 560, 122 S.Ct. at 2415.

Here, the district court could have imposed an executed sentence of 36 months without finding Barker possessed a firearm. To do so, however, the court would have had to cite substantial and compelling aggravating factors under the guidelines. Because *Blakely*, and now our supreme court in *Shattuck*, recognize the presumptive sentence as the "maximum" sentence authorized by the jury's verdict, the mandatory minimum has a different effect than in *Harris. See Blakely*, —— U.S. at ——, 124 S.Ct. at 2537; *Shattuck*, 689 N.W.2d at 786. The mandatory-minimum sentence is no longer just the smallest of a number of authorized durations within the broad statutory sentencing range. It is now a sentence duration that must be compared to the presumptive sentence, the duration authorized solely by the jury's verdict under *Blakely*.

Under the sentencing guidelines, when a mandatory-minimum sentencing provision applies, the presumptive sentence becomes "the mandatory minimum sentence according to statute or the duration of the prison sentence provided in the appropriate cell of the Sentencing Guidelines Grid, whichever is longer." Minn. Sent. Guidelines II.E. The firearm-enhancement statute applies to a wide range of offenses, including many, such as second-degree murder, kidnapping, and first-degree criminal sexual conduct, with ordinary presumptive sentences much longer than the three-year mandatory minimum provided in Minn.

Stat. § 609.11, subd. 5(a). *See* Minn.Stat. § 609.11, subd. 9 (2002) (list of applicable offenses); Minn. Sent. Guidelines IV (guidelines grid), V (Offense Severity Reference Table). For these more serious offenses, the mandatory-minimum sentence, because it does not increase the presumptive sentence, has no significance for purposes of *Blakely* and the jury-trial right.

But the presumptive sentence for Barker's fifth-degree controlled substance crime, without the application of Minn. Stat. § 609.11, subd. 5(a), would have been only a stayed sentence of one year and one day. Minn. Sent. Guidelines IV, V. The mandatory-minimum statute, therefore, increased the sentence the court could impose, without departure, above the presumptive sentence, the duration that would be determined solely by the jury's verdict.

This court has recognized that the presumptive sentence under the sentencing guidelines is not determined solely by the jury's verdict. *See Hanf*, 687 N.W.2d at 661 (noting presumptive sentence is determined in part by criminal history score, "which is not a fact found by the jury"). The calculation of the ordinary presumptive sentence depends on judicial findings in other ways, such as the assignment of a custody-status point and the weighing of prior convictions. *See* Minn. Sent. Guidelines II.B.1.a., II.B.2. This court has rejected the argument that the custody-status point, which is used to determine the presumptive sentence, violates *Blakely* because it is determined by the court rather than a jury. *See State v. Brooks*, 690 N.W.2d 160, 163 (Minn.App.2004), *pet. for review filed* (Minn. Jan. 26, 2005). *Brooks* notes that "the concept of a 'presumptive sentence' is meaningless without a criminal history score, which includes status points." *Id.*

But the section 609.11 mandatory minimum has a much more dramatic effect than these judicially found determinants of the presumptive sentence. The mandatory minimum creates an *alternative* presumptive sentence, completely distinct from the ordinary presumptive sentence that can be easily calculated from the guidelines grid. It is a new "presumptive" sentence entirely determined by a judicial finding.

■ It cannot be said, as it can with the criminal history score, that the concept of a presumptive sentence, relied upon in *Blakely*, is "meaningless" without the mandatory minimum. The ordinary presumptive sentence determined from the guidelines grid retains its original meaning even if usurped by a mandatory minimum imposed by statute. The mandatory-minimum statute functions the same as an aggravating factor by increasing what otherwise would be the presumptive sentence. Because it functions in the same way, we conclude, it should be treated the same as an upward departure from the presumptive sentence for purposes of *Blakely*.

■ The state argues that even if *Blakely* applies to a section 609.11 mandatory-minimum enhancement, because Barker admitted the facts essential to a finding that he possessed the gun, Barker is not entitled to relief under *Blakely*. *See Blakely*, — U.S. at ——, 124 S.Ct. at 2537 (recognizing exception to jury-trial right when defendant admits facts supporting increase in sentence). The state acknowledges that this court has held that such a *Blakely* "admission" must be accompanied by a full waiver of the right to a jury determination of sentencing facts. *State v. Hagen*, 690 N.W.2d 155, 159 (Minn.App.2004). But the state argues that because Barker made personal admissions in sworn testimony, *Hagen* is not controlling.

The state's argument over-simplifies the issue involved in a finding of firearms possession under Minn.Stat. § 609.11. Before the statute may be applied, it must be found, based on all the facts and circumstances, that the defendant possessed a firearm and that doing so increased the risk of violence from the commission of the crime. *State v. Royster*, 590 N.W.2d 82, 85 (Minn.1999). Barker's admissions that the gun was his, that he had placed it on the front seat, and that he carried it "for protection" tended to support the application of the statute. But they fell short of constituting a complete admission to facts supporting the application of section 609.11. Indeed, since Barker demanded a contested sentencing hearing on that issue, he was hardly likely to make such a sweeping admission. In particular, Barker denied that he possessed the drugs for purposes of sale, and he was found asleep in his parked car, making it unclear that he was actually dealing drugs at the time that he was found. Thus, he did not admit that possession of the gun increased the risk of violence of whatever crime he was then committing. Therefore, we conclude that, Barker did not make a full admission in his trial testimony that would satisfy *Blakely*.

## II.

■ The state also argues that, assuming *Blakely* applies, the appropriate remedy is to remand to allow the state to prove its section–609.11 case to a jury. The supreme court has recently ordered supplemental briefing on the remedy issues in *State v. Shattuck*, 689 N.W.2d at 786. In that order, the court implied that placing the facts regarding the sentencing enhancement before a jury may require the "inherent authority" of that court. *See id.* (requesting briefing, in part, on whether supreme court has inherent authority to authorize use of sentencing juries and bi-

furcated trials). Therefore, it is inadvisable for this court to specify the appropriate *Blakely* remedy at this time. Accordingly, the sentence must be remanded for resentencing in such proceedings as the district court deems appropriate.

## DECISION

The imposition of the mandatory-minimum sentence under Minn.Stat. § 609.11, subd. 5(a) (2002) violated appellant's right to a jury trial under *Blakely*.

**Reversed and remanded.**