**STATE of Minnesota, Respondent,**

v.

**Charles Edward BOEHL, Appellant.**

**No. A04–583.**

Court of Appeals of Minnesota.

June 7, 2005.

Mike Hatch, Attorney General, St. Paul, Minnesota; and Alan L. Mitchell, St. Louis County Attorney, James T. Nephew, Assistant County Attorney, Duluth, MN, for respondent.

John M. Stuart, State Public Defender, Suzanne Senecal–Hill, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; SCHUMACHER, Judge; and PORITSKY, Judge.*

_____

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

HUDSON, Judge.

Appellant Charles Edward Boehl challenges his convictions of first- and second-degree criminal sexual conduct arguing that the district court abused its discretion in admitting *Spreigl* evidence of a prior incident of indecent exposure. Appellant also challenges his sentence, arguing that (a) the upward durational departure under the patterned-sex-offender statute violated his right to a jury trial under *Blakely v. Washington*, and (b) a juvenile adjudication is not a prior qualifying criminal-sexual-conduct conviction triggering the mandatory imposition of a ten-year conditional release term. We affirm appellant's conviction, but reverse appellant's sentence and remand for resentencing consistent with this opinion.

## FACTS

Following an allegation by then 12-year-old K.M.D. that appellant engaged in sexual conduct with her when she was six or seven years old, the state charged appellant with one count of first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subd. 1(a) (1996), one count of second-degree criminal sexual conduct in violation of Minn.Stat. § 609.343, subd. 1(a) (1996), and one count of second-degree criminal sexual conduct in violation of Minn.Stat. § 609.343, subd. 1(h)(iii) (1996).

The district court held a jury trial in April 2003. At trial, the state alleged that appellant engaged in inappropriate sexual conduct with then six- or seven-year-old K.M.D. in 1996. Appellant met K.M.D. through his relationship with K.M.D.'s aunt, Kelly Kridermacher. Appellant and Kridermacher shared an apartment in the

spring of 1996. K.M.D. spent the night at Kridermacher's apartment approximately two to three times per week. When Kridermacher was called into work or needed to run errands, she left K.M.D. with appellant. Kridermacher testified that K.M.D. and appellant initially got along, but K.M.D. became quiet and angry in the summer of 1996, stating that she did not enjoy being in appellant's company. In September 1996, appellant and Kridermacher broke off their relationship and appellant moved out of the apartment.

K.M.D. first disclosed that appellant had engaged in inappropriate sexual conduct with her in the summer of 2001. At that time, K.M.D. told Kridermacher that appellant had touched her "like a girl and a guy." Kridermacher did not, however, contact the police and did not inform K.M.D.'s mother.

K.M.D. disclosed appellant's conduct to other family members in November 2001 at a family funeral. Included in the conversation were Patricia Kirkwood, K.M.D.'s grandmother, and Angel Waters, K.M.D.'s aunt. At trial, Kirkwood and Waters testified that K.M.D. told the group that she had "a secret" and that appellant had touched her "down there." Neither witness heard K.M.D. specify where or when the inappropriate contact occurred or the extent of the sexual contact, but both recalled K.M.D. explaining that appellant threatened to hurt her family if she told anyone. Waters phoned K.M.D.'s mother, Joy Daly. Daly testified that K.M.D. told her that appellant "had touched her down there" and "had licked her down there" while she was staying with Kridermacher.

K.M.D.'s family reported the incident, and the case was assigned to Officer Laura Marquardt. Officer Marquardt interviewed K.M.D. in January 2002. According to Officer Marquardt's testimony,

K.M.D. told Officer Marquardt that appellant touched her with his hands "down in the vagina" "about 13 times," then clarified that appellant removed her pants and once licked her inside her vagina. K.M.D. also described an additional incident to Officer Marquardt when appellant attempted to "get on top" of her at her grandmother's house while her clothes were on.

K.M.D. testified to these instances of sexual conduct at trial. But when describing appellant's oral contact, K.M.D. said that appellant's tongue was outside her vagina. The state played a video of K.M.D.'s first witness interview with Officer Marquardt in which she described appellant's sexual conduct.

Over appellant's objection, the state introduced *Spreigl* evidence at trial regarding an October 2001 incident of indecent exposure involving then five-year-old J.A.B. At the time, appellant and J.A.B.'s mother, Joannie Brigan, were cohabiting. On October 25, 2001, J.A.B.'s grandmother, Carol Brigan, arrived at the home to pick up J.A.B. shortly after 10:00 a.m. She saw appellant and J.A.B. walking down the stairs. Appellant was wearing a bathrobe; J.A.B. was clothed. J.A.B. later told her grandmother that appellant had "untied his robe and showed [her] his bottom." J.A.B. later told her mother that appellant undid his robe and showed J.A.B. his "tu-tu," which J.A.B. later explained means "privates." J.A.B. told her mother that appellant then picked her up and placed her on top of him. J.A.B., her mother, and her grandmother testified to these events at trial. Additionally, the jury viewed the videotape of J.A.B.'s first witness interview with Officer Marquardt.

Appellant did not present any witnesses and did not testify. With respect to the *Spreigl* evidence, the trial court gave a cautionary limiting instruction to the jury

both before receipt of the evidence and before closing arguments.

The jury convicted appellant on all three charges. Following the trial, the state moved for an upward durational departure arguing that appellant qualified as a patterned-and-predatory offender under Minn.Stat. § 609.1352, subd. 1 (1996) (now codified at Minn.Stat. § 609.108, subd. 1 (2004)). At the January 7, 2003 sentencing hearing, the district court granted the state's motion and sentenced appellant to 196 months, a double-upward durational departure. The court also imposed a ten-year conditional release term after concluding that appellant's prior juvenile adjudication for third-degree criminal sexual conduct was a qualifying offense under Minn.Stat. § 609.346, subd. 5 (1996) (now codified at Minn.Stat. § 609.109, subd. 7 (2004)). This appeal follows.

## ISSUES

I. Did the district court abuse its discretion by admitting the *Spreigl* evidence?

II. Does the district court's upward durational departure under the patterned-and-predatory-offender statute violate appellant's Sixth Amendment right to a jury trial?

III. Is a juvenile adjudication a qualifying prior criminal-sexual-conduct conviction mandating imposition of a ten-year conditional release term?

## ANALYSIS

### I

■ Appellant first challenges the district court's decision to admit evidence of appellant's prior incident of indecent exposure. Evidence of another crime, wrong, or act is not admissible at trial to prove the character of a person to show that he acted in conformity therewith. Minn. R. Evid. 404(b). Such evidence may be admissible for other purposes, however, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See id.* Such evidence is known as "*Spreigl* evidence" in Minnesota. *State v. Kennedy,* 585 N.W.2d 385, 389 (Minn.1998). The admission of *Spreigl* evidence lies within the sound discretion of the district court and will not be reversed absent a clear abuse of discretion. *State v. Spaeth,* 552 N.W.2d 187, 193 (Minn.1996).

■ To admit *Spreigl* evidence, the district court must determine "(1) that the evidence is clear and convincing that the defendant participated in the other offense; (2) that the *Spreigl* evidence is relevant and material to the state's case; and (3) that the probative value of the *Spreigl* evidence is not outweighed by its potential for unfair prejudice." *State v. Shannon,* 583 N.W.2d 579, 583 (Minn.1998).

■ Appellant does not dispute that the state presented clear and convincing evidence of the prior act of indecent exposure, but he argues that the district court abused its discretion because the evidence was irrelevant, cumulative, and prejudicial. Appellant asserts that, as a result of this evidence, he was denied a fair trial. We disagree.

In criminal sexual conduct cases, particularly in child sex abuse prosecutions, prior acts of sexual conduct are often relevant where the defendant disputes that the sexual conduct occurred or where the defendant asserts the victim is fabricating the allegations. *See State v. Wermerskirchen,* 497 N.W.2d 235, 240–41 (Minn.1993); *see also State v. Duncan,* 608 N.W.2d 551, 557 (Minn.App.2000), *review denied* (Minn. May 16, 2000). "Given the secrecy in which such acts take place, the vulnerabili-

ty of the victims, the absence of physical proof of the crime ... and a general lack of confidence in the ability of the jury to assess the credibility of child witnesses," the prior convictions are relevant to show a common plan or scheme on the part of the defendant, i.e., to establish that the act occurred. *Id.* (quoting 22 C. Wright and K. Graham, *Federal Practice & Procedure—Evidence* § 5239 at 461–62 (1978)).

The state offered the *Spreigl* evidence to show appellant's intent, and his common scheme or plan. Appellant denied that the inappropriate sexual contact occurred. Although appellant did not put forth a defense, the state's entire case rested on the testimony of K.M.D., because the crime produced no physical evidence and other witnesses could only corroborate K.M.D.'s disclosure and appellant's access. The *Wermerskirchen* decision is therefore directly on point. In terms of similarity, the *Spreigl* evidence demonstrated a pattern of opportunistic fondling of young girls aged five to seven after establishing a relationship of trust with their mothers. While the current offense is more severe, we conclude that the *modus operandi* was sufficiently similar.

We note, however, the supreme court's instruction in *Ture v. State* to exclude *Spreigl* evidence "where it is merely cumulative and a subterfuge for impugning a defendant's character or for indicating to the jury that he is a proper candidate for punishment." 681 N.W.2d 9, 16 (Minn. 2004) (agreeing with the appellant's argument that the state's presentation of 24 witnesses testifying to one *Spreigl* incident for three days of a twelve-day trial was highly prejudicial) (quoting *State v. Billstrom*, 276 Minn. 174, 179, 149 N.W.2d 281, 284–85 (1967)). Here, the evidence presented was largely cumulative and bordered on violating the principles affirmed in *Ture.*

Nevertheless, we conclude that the district court did not abuse its discretion because the *Spreigl* evidence was sufficiently probative on the issue of whether the conduct K.M.D. alleged actually occurred to outweigh the potential for unfair prejudice.

## II

■ Appellant also challenges the constitutionality of his sentence under the patterned-and-predatory-offender statute, Minn.Stat. § 609.1352, subd. 1 (1996) (now codified at Minn.Stat. § 609.108, subd. 1 (2004)), arguing that the district court violated his Sixth Amendment right to a jury trial by upwardly departing from the presumptive guidelines sentence based on findings of fact that were not made by a jury. This court reviews a constitutional challenge to a statute de novo. *State v. Wright*, 588 N.W.2d 166, 168 (Minn.App. 1998).

■ In *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court refined the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." *Blakely*, —— U.S. ——, 124 S.Ct. at 2536 (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63). Following *Blakely*, the relevant statutory maximum is "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 2537. Consequently, under *Blakely*, any upward durational departure from a statutory presumptive sentence must be based on factual findings either *"reflected in the jury verdict or admitted by the defendant." Id.*

This court has held that *Blakely* applies to the Minnesota sentencing guidelines. *See State v. Conger*, 687 N.W.2d 639 (Minn.App.2004) (involving guilty plea), *review granted* (Minn. Dec. 22, 2004)[1]; *State v. Saue*, 688 N.W.2d 337 (Minn.App.2004) (involving jury verdict), *review granted* (Minn. Jan. 20, 2005) (stayed pending decision in *Shattuck*). In *State v. Mitchell*, this court applied *Blakely* to a sentence imposed under the career-offender statute, Minn.Stat. § 609.1095, subd. 4 (2004), because the determination that a defendant has engaged in a "pattern of criminal conduct" goes beyond a mere determination as to the fact and number of an offender's prior convictions. 687 N.W.2d 393, 399–400 (Minn.App.2004), *review granted* (Minn. Dec. 22, 2004) (stayed pending decision in *Shattuck*). Additionally, this court determined that *Blakely* applied to an upward departure under the dangerous-offender statute, Minn.Stat. § 609.1095, subd. 2 (2004), reasoning that the danger-to-public-safety statutory factor required factual findings outside the stipulated record. *See State v. Fairbanks*, 688 N.W.2d 333, 336 (Minn.App.2004) (vacating the appellant's sentence), *review granted* (Minn. Jan. 20, 2004) (stayed pending decision in *Shattuck*).

■ Here, the district court sentenced appellant to a double upward durational departure under the patterned sex offender statute, Minn.Stat. § 609.1352, subd. 1 (1996) (now codified at Minn.Stat. 609.108, subd. 1 (2004)). Under the patterned-sex-offender statute, when a court imposes an executed sentence for a conviction of first-degree criminal sexual conduct, the court "shall" impose a sentence that is not less than double the presumptive sentence but not more than the statutory maximum if the defendant meets the criteria of a patterned sex offender. Minn.Stat. § 609.108, subd. 1(a) (2004). The criteria are: (1) it reasonably appears the crime was motivated by the offender's sexual impulses or was a part of a predatory pattern of behavior that had criminal sexual conduct as its goal; (2) the offender is a danger to public safety; and (3) based on a professional assessment by an experienced examiner, the offender needs long-term treatment beyond the presumptive term of imprisonment and supervised release. *Id.*, subd. 1(a)(1)-(3) (2004). A sentence imposed under the statute is a departure from the sentencing guidelines. *Id.*, subd. 5 (2004).

In *State v. Whitley*, this court declined to apply *Blakely* to Minn.Stat. § 609.108, subd. 1, noting the supreme court's determination that the provision required findings on factors traditionally left to the district courts. 682 N.W.2d 691, 696 (Minn.App.2004) (citing *State v. Grossman*, 636 N.W.2d 545, 550–51 (Minn.2001)). The *Whitley* court, however, applied *Blakely* and reversed the appellant's sentence under Minn.Stat. § 609.108, *subd. 2* (2004), which required a finding that the defendant's predatory crime was motivated by or committed in the course of or furtherance of sexual conduct. *Id.* We conclude that, following *Mitchell* and *Fairbanks*,

---

1. The supreme court granted review in *Conger*, but stayed additional processing of the matter pending a final decision in *State v. Shattuck*, No. C6–03–362 (Minn. argued Nov. 30, 2004). By order filed in *Shattuck* on December 16, 2004, the supreme court held that the imposition of an upward durational departure under the sentencing guidelines and based on aggravating factors not considered by the jury was a violation of the defendant's rights as articulated in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *State v. Shattuck*, 689 N.W.2d 785, 786 (Minn. Dec.16, 2004) (per curiam). The court indicated that a full opinion will follow and directed the parties to submit additional briefs on the appropriate remedy. *Id.*

this distinction between traditional and non-traditional sentencing factors is illusory.

Appellant's sentence under the patterned sex offender statute was based on factors that go beyond mere criminal history and that were not admitted or found by a jury. The district court found—based on testimony from two psychologists, appellant's probation officer, and appellant—that it "reasonably appear[ed] that [appellant's] crimes were motivated by [appellant's] sexual impulses; that the crime was part of a predatory pattern of behavior which had sexual conduct as its goal." The district court also found that appellant was a danger to public safety. Because appellant did not waive his right to a jury trial on these findings, his sentence violates the Sixth Amendment.

## III

■ Appellant also challenges the district court's imposition of a ten-year conditional release term under Minn.Stat. § 609.346, subd. 5 (1996) (now codified at Minn.Stat. § 609.109, subd. 7 (2004)), arguing that his prior juvenile adjudication is not a previous sex offense "conviction" mandating a ten-year conditional release term. We agree.

■ Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). When interpreting a statute, this court focuses on the words of the statute to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2004).

Minn.Stat. § 609.109, subd. 7, mandates a ten-year conditional release period when a defendant has a "previous sex offense conviction" as defined by Minn.Stat. § 609.109, subd. 5 (2004). Subdivision 5 states that "a conviction is considered a

previous sex offense conviction if the person was convicted of a sex offense before the commission of the present offense of conviction." *Id.,* subd. 5. The subdivision does not otherwise define "conviction." Minnesota law generally defines "conviction" as (1) a plea of guilty; or (2) a verdict of guilty by a jury or a finding of guilty by the court. Minn.Stat. § 609.02, subd. 5 (2004). But Minnesota law also instructs that "[n]o adjudication upon the status of any child in the jurisdiction of the juvenile court shall ... be deemed a conviction of crime." Minn.Stat. § 260B.245, subd. 1 (2004).

In addition, the legislature has specifically included both convictions and juvenile adjudications when drafting other provisions of the Minnesota Statutes, suggesting that the legislature did not intend to include juvenile adjudications in the context of mandatory conditional release. *See, e.g.,* Minn. Stat § 243.166, subd. 1(a)(1) (2004) (requiring registration as a predatory offender if "convicted of or adjudicated delinquent"); Minn.Stat. § 609.224, subd. 4(b) (2004) (enhancing fifth-degree assault to a felony upon demonstration of "qualified domestic violence-related offense convictions or adjudications of delinquency"); Minn.Stat. § 624.713, subd. 1(b) (2004) (providing that a "person who has been convicted of, or adjudicated delinquent" cannot legally possess a firearm).

Accordingly, we conclude that under Minn.Stat. § 609.109, subd. 7, juvenile adjudications are not qualifying criminal-sexual-conduct convictions requiring the imposition of a mandatory ten-year conditional release term. Consequently, the district court erred in imposing the ten-year term based solely on appellant's prior juvenile adjudication; section 609.109, subdivision

7, mandates that appellant receive a five-year conditional release term.

Appellant also submitted a pro se brief applying the principles of conditional acceptance to his conviction. Appellant did not present this argument to the district court. Therefore, we decline to review appellant's argument on appeal. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996).

## DECISION

Because the challenged *Spreigl* evidence was sufficiently probative to outweigh the potential for prejudice, we affirm the conviction. But, because the district court (a) violated appellant's Sixth Amendment right to a jury trial by imposing an upward durational departure on his criminal-sexual-conduct sentence based on judicially found facts, and (b) improperly imposed a ten-year conditional release term without a prior qualifying criminal-sexual-conduct conviction, we reverse appellants sentence and remand for sentencing consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**