**STATE of Minnesota, Appellant,**

v.

**Charles Edward BOEHL, Respondent.**

**No. A06–1643.**

Court of Appeals of Minnesota.

Feb. 6, 2007.

Lori Swanson, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN; and Melanie S. Ford, St. Louis County Attorney, Duluth, MN, for appellant.

John M. Stuart, State Public Defender, Benjamin J. Butler, Assistant State Public Defender, Minneapolis, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; WRIGHT, Judge; and CRIPPEN, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
1. This statute requires the district court to sentence an offender convicted of violating or attempting to violate sections 609.342, 609.343, 609.344, 609.345, or any other predatory offense to a term of imprisonment that is at least double the presumptive guidelines sentence, but not more than the statutory maximum, if the district court finds that (1)

## OPINION

WRIGHT, Judge.

Appellant State of Minnesota challenges the district court's imposition of the presumptive guidelines sentence on remand from our reversal of respondent-defendant's sentence. Appellant argues that the district court erred by failing to consider using its inherent judicial authority to impanel a resentencing jury to determine whether the aggravating factors listed in the patterned-sex-offender sentencing-enhancement statute are present in this case. We reverse and remand.

## FACTS

Based on events that occurred in 1996, a jury found respondent Charles Boehl guilty of one count of first-degree criminal sexual conduct, in violation of Minn.Stat. § 609.342, subd. 1(a) (1996), and two counts of second-degree criminal sexual conduct, in violation of Minn.Stat. § 609.343, subd. 1(a), (h)(iii) (1996). The state moved the district court to depart from the sentencing guidelines and impose an enhanced sentence under the patterned-sex-offender statute, Minn.Stat. § 609.1352, subd. 1 (1996)[1] (subsequently codified at Minn.Stat. §§ 609.108, subd. 1 (1998), 609.3455, subd. 3a (2006) (engrained-sex-offender statute)). The district court granted the motion and imposed a sentence of 196 months' imprisonment

the offense was motivated by the offender's sexual impulses or was part of a predatory pattern of behavior that had criminal sexual conduct as a goal; (2) the offender is a danger to public safety; and (3) the offender needs long-term treatment or supervision beyond the presumptive term of imprisonment and supervised release. Minn.Stat. § 609.1352, subd. 1.

and ten years' conditional release based on its determination that (1) Boehl's offenses were motivated by sexual impulses, (2) the offenses were part of a predatory pattern of behavior that had criminal sexual conduct as its goal, (3) Boehl was a danger to public safety, and (4) Boehl was in need of long-term treatment beyond the prison and conditional-release terms.

On appeal, we held that the district court's imposition of an upward durational departure violated the constitutional right to a jury trial under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because it was based on judicial findings regarding the presence of aggravating factors defined in the patterned-sex-offender statute. *State v. Boehl*, 697 N.W.2d 215, 222 (Minn.App. 2005), *review denied* (Minn. Aug. 16, 2005). We, therefore, reversed Boehl's sentence and remanded to the district court for resentencing consistent with *Blakely*. *Id.* at 223.

On remand, the state moved the district court to impanel a resentencing jury under Minn.Stat. § 244.10, subd. 5(a) (Supp. 2005),[2] that would determine whether Boehl qualifies for an aggravated durational departure under the patterned-sex-offender statute. The district court denied the motion, holding that there is no version of the patterned-sex-offender statute that may be applied constitutionally to Boehl because the 1996 through 2004 versions require judicial fact-finding, which violates the constitutional right to a jury determination on aggravating factors, and the 2005 version applies only to offenses committed on or after August 1, 2005. 2005 Minn. Laws ch. 136, art. 2, § 6, at 923.

The state moved the district court to reconsider, arguing that the recently enacted 2006 version of section 244.10, subdivision 5, which applies to sentencing and resentencing hearings sought on or after June 2, 2006, requires the district court to impanel a jury to make factual findings regarding the aggravating factors necessary to support the state's request for an enhanced sentence under a sentencing-enhancement statute. 2006 Minn. Laws ch. 260, art. 1, § 1, at 708; 2006 Minn. Laws ch. 260, at 829 (stating date signed by governor). The district court denied reconsideration and sentenced Boehl to the presumptive guidelines sentence of 98 months' imprisonment and five years' supervised release. This expedited appeal followed.

## ISSUES

I. Could the district court have properly exercised its inherent judicial authority to impanel a resentencing jury to make findings regarding the aggravating factors defined in Minn.Stat. § 609.1352, subd. 1 (1996)?

II. If the district court could have properly exercised its inherent judicial authority to impanel a resentencing jury, was it required to do so?

## ANALYSIS

■ This case involves the application of a statutory sentencing scheme, which, as written, prescribes a procedure for determining whether to impose an enhanced sentence that violates the right to a jury trial under the Sixth Amendment of the

---

**2.** "When the prosecutor provides reasonable notice ..., the district court shall allow the state to prove beyond a reasonable doubt to a jury of 12 members the factors in support of the state's request for an aggravated departure from the Sentencing Guidelines...." Minn.Stat. § 244.10, subd. 5(a) (Supp.2005).

United States Constitution. The patterned-sex-offender statute governing Boehl's offenses requires a district court to sentence a defendant convicted of violating Minn.Stat. § 609.342 (1996) or Minn.Stat. § 609.343 (1996) to an enhanced sentence if the district court finds that the requisite aggravating factors are present. Minn. Stat. § 609.1352, subd. 1 (1996) (subsequently codified at Minn.Stat. §§ 609.108, subd. 1 (1998), 609.3455, subd. 3a (2006)). But a district court's imposition of an enhanced sentence based on judicial findings regarding the requisite aggravating factors violates the Sixth Amendment right to a trial by jury. *Blakely v. Washington,* 542 U.S. 296, 304, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004). We are required to determine whether, in light of the conflict between legislative and constitutional mandates, the district court can properly exercise its inherent judicial authority to effectuate the legislature's intent to enhance the sentences of patterned sex offenders in a constitutional manner by impaneling a resentencing jury.

In our prior decision in this matter, we held that the district court's imposition of an enhanced sentence under the patterned-sex-offender statute violated the Sixth Amendment because the patterned-sex-offender statute requires the district court, rather than a jury, to make findings regarding the aggravating factors. *State v. Boehl,* 697 N.W.2d 215, 222 (Minn.App. 2005) (citing *Blakely* ), *review denied* (Minn. Aug. 16, 2005). To correct the unconstitutional aspect of the patterned-sex-offender statute, the legislature amended the statute in 2005 to require the "fact finder" to make the requisite findings as to the existence of aggravating factors. Minn.Stat. § 609.108, subd. 1 (Supp.2005). But the amendment applies only to offenses committed on or after August 1,

2005, 2005 Minn. Laws ch. 136, art. 2, § 6, at 923, and is, therefore, inapplicable to Boehl, who committed his offenses in 1996. Consequently, the dates of Boehl's offenses and his resentencing put the district court's resentencing decision squarely between the problem identified in *Blakely* regarding the unconstitutional judicial-fact-finding provision in Minn.Stat. § 609.1352, subd. 1 (1996), and the legislative solution to that problem, namely, the 2005 amendment. The district court regarded its resentencing options as limited to either violating the right to a jury determination on aggravating factors by applying Minn.Stat. § 609.1352, subd. 1 (1996), or giving Boehl what amounts to arbitrary immunity from a sentencing enhancement, occasioned only by the timing of his offenses, and imposing the presumptive guidelines sentence. The district court chose the latter option.

The state argues that the district court was not confined to these limited options. Rather, the state maintains that the district court erred by failing to acknowledge and exercise its inherent judicial authority to impanel a resentencing jury to make the requisite findings, which would have vindicated Boehl's Sixth Amendment rights *and* effectuated the legislative policy favoring aggravated sentencing departures when appropriate. These issues present questions of law, which we review de novo. *State v. Chauvin,* 723 N.W.2d 20, 23 (Minn.2006).

### I.

■ As a preliminary matter, Boehl argues that the state waived its inherent-judicial-authority argument because the state failed to raise that argument in its initial appellate brief. Ordinarily, issues that are not briefed on appeal are waived.

*State v. Butcher*, 563 N.W.2d 776, 780 (Minn.App.1997), *review denied* (Minn. Aug. 5, 1997). Moreover, issues that are not raised or argued in an appellant's initial brief ordinarily may not be revived in an appellant's reply brief. *McIntire v. State*, 458 N.W.2d 714, 717 n. 2 (Minn.App. 1990), *review denied* (Minn. Sept. 28, 1990). But we have discretion to address any issue that justice compels us to address. Minn. R.Crim. P. 28.02, subd. 11.

■ Here, the state's initial brief was filed before the Minnesota Supreme Court released *State v. Chauvin*, 723 N.W.2d 20 (Minn.2006), and *State v. Kendell*, 723 N.W.2d 597 (Minn.2006), both of which are relevant to our analysis of whether the district court could have properly exercised its inherent judicial authority to impanel a resentencing jury. But the state astutely anticipated in its initial brief that the supreme court would release its decisions in those cases before we had the opportunity to decide this matter. In turn, Boehl deftly anticipated the arguments that the state could raise in response to the supreme court's decisions— all of which the state subsequently raised in its reply brief—and utilizes six pages of well-reasoned analysis to refute these arguments. Because the state correctly anticipated that the supreme court would further define when it is proper for a district court to exercise its inherent judicial authority to impanel sentencing and resentencing juries, because Boehl predicted and thoroughly analyzed the state's arguments in response to *Chauvin* and *Kendell*, and because this is an issue of substantial import in the wake of *Blakely*, justice compels us to address this issue.

The Minnesota Supreme Court first considered the issue of whether a district court possesses the inherent judicial authority to impanel sentencing and resentencing juries in *State v. Shattuck*, 704 N.W.2d 131, 147–48 (Minn.2005) (*Shattuck II*). The district court had sentenced Shattuck to an enhanced sentence under the repeat-sex-offender statute, Minn.Stat. § 609.109, subd. 4(a) (2004), rather than the presumptive guidelines sentence, and we affirmed. *State v. Shattuck*, No. C6–03–362, 2004 WL 772220 (Minn.App. Apr. 13, 2004), *rev'd*, 704 N.W.2d 131 (Minn. 2005). While Shattuck's petition for review was pending before the Minnesota Supreme Court, the United States Supreme Court issued its decision in *Blakely*. *Shattuck II*, 704 N.W.2d at 135. In accordance with the rule announced in *Blakely*, the Minnesota Supreme Court reversed our decision affirming Shattuck's sentence and remanded the matter to the district court for resentencing. *Id.* The supreme court addressed the resentencing procedure to be used on remand and acknowledged that a district court possesses the inherent judicial authority to establish procedures that comply with *Blakely*. *Id.* at 148. But the supreme court nevertheless rejected the suggestion that the district court should exercise that inherent judicial authority to impanel a resentencing jury. *Id.* Rather, it left to the legislature the task of amending Minnesota's sentencing scheme to comport with the *Blakely* decision. *Id.; see also State v. Henderson*, 706 N.W.2d 758, 762–63 (Minn.2005) (considering career-offender sentencing-enhancement statute, codified at Minn.Stat. § 609.1095 (2004), and remanding for resentencing consistent with *Shattuck II*).

The supreme court reached this same conclusion in *State v. Barker*, in which the district court had sentenced Barker under Minn.Stat. § 609.11, subd. 5(a) (2004) (providing for mandatory minimum sentence of three years after judicial finding of firearm

possession during commission of predicate offense), rather than imposing the presumptive guidelines sentence. 705 N.W.2d 768, 770–71 (Minn.2005). We reversed the sentence because it was imposed in violation of the Sixth Amendment right to a jury trial. *State v. Barker*, 692 N.W.2d 755, 757–60 (Minn.App.2005) (citing *Blakely*), *aff'd*, 705 N.W.2d 768 (Minn.2005). The supreme court affirmed and remanded the matter to the district court for resentencing. *Barker*, 705 N.W.2d at 776. As in *Shattuck II*, the supreme court in *Barker*, relying on *Shattuck II*, rejected the argument that the district court should exercise its inherent judicial authority to impanel a resentencing jury. *Id.* at 775–76 (also considering and rejecting argument that district court possessed *statutory* authority to impanel resentencing jury).

Nearly a year later, the Minnesota Supreme Court issued its decisions in *Chauvin* and *Kendell*. In *Chauvin*, the district court submitted to the same jury that had convicted Chauvin the question of whether the aggravating factor of victim vulnerability, as defined in the Minnesota Sentencing Guidelines, was present. 723 N.W.2d at 23. This sentencing-related finding of fact was made by the jury after *Blakely* was decided but before the legislature amended the unconstitutional judicial-fact-finding provisions in the sentencing guidelines to comply with *Blakely* or enacted legislation authorizing the use of sentencing juries. *Id.* at 23–24.

In analyzing the propriety of the district court's action, the *Chauvin* court acknowledged and applied the rule that a district court possesses the "inherent judicial authority to engage in activities that are (1) necessary (2) to achieve a unique judicial function (3) without infringing on equally important legislative or executive func-

tions." *Id.* at 24. The supreme court observed that, because the legislature had not amended the unconstitutional judicial-fact-finding provision in the sentencing guidelines, the legislature had not established a constitutionally sound mechanism for the district court to impose the upward departure mandated by the sentencing guidelines when the victim is particularly vulnerable. *Id.* Nor had the legislature provided guidance on how to effectuate the intent of the departure provisions of the sentencing guidelines without such a mechanism. *Id.* In the absence of a constitutionally sound mechanism or legislative guidance, the supreme court held that the district court's use of a sentencing jury was necessary both to carry out the legislature's sentencing scheme and to vindicate Chauvin's Sixth Amendment right to a jury determination of facts, such as victim vulnerability, that could result in an upward durational departure from the presumptive guidelines sentence. *Id.*

The *Chauvin* court also held that the use of sentencing juries to make factual findings falls within the judiciary's unique functions, as it is the "historical and constitutional function of the judiciary to safeguard the rights of criminal defendants by providing for a jury trial *where the statutory scheme is silent on the issue.*" *Id.* at 26–27 (emphasis added).

Finally, the *Chauvin* court held that the district court had not infringed on the legislative function of creating a sentencing system because, at the time the sentencing hearing occurred, "*Blakely* had established that the judicial fact finding on sentencing factors contemplated by the guidelines was unconstitutional," but the legislature had not adopted any "new legislation providing for the same or a different procedure." Id. at 27. Rather, the

district court had effectuated "the legislative policy of allowing the opportunity to depart from the presumptive sentence where 'substantial and compelling circumstances exist.'" *Id.* (quoting Minn. Sent. Guidelines I.4) (citing Minn. Sent. Guidelines II.D).

Because the use of a sentencing jury was necessary to achieve a unique judicial function and did not infringe on equally important legislative or executive functions, the *Chauvin* court held that the district court not only possessed the inherent judicial authority to impanel a sentencing jury to make findings regarding the aggravating factor of victim vulnerability, *id.*, but also exercised that authority properly in that the district court's actions were consistent with subsequent legislative enactments such as Minn.Stat. § 244.10 (2004 & Supp.2005) (authorizing use of sentencing juries for resentencing hearings), *id.* at 29. And it held that neither *Shattuck II* nor *Barker* precluded the district court's exercise of that authority. *Id.*

In *Kendell,* the state also sought an aggravated sentence, but unlike in *Chauvin,* it did so under the sentencing-enhancement statute codified at Minn.Stat. § 609.1095 (2004). 723 N.W.2d at 604. In its efforts to effectuate the legislature's intent regarding sentencing enhancements and to protect Kendell's Sixth Amendment rights, the district court submitted a special interrogatory to the jury regarding the aggravating factors defined in section 609.1095. *Id.* As in *Chauvin,* the district court utilized a sentencing jury even though the legislature had neither amended section 609.1095 to bring the unconstitutional judicial-fact-finding provision into compliance with *Blakely's* mandate, nor provided guidance as to how a district court should proceed in light of the stat-

ute's constitutional deficiency. *Id.* at 610. Consistent with *Chauvin,* the Minnesota Supreme Court held that the district court had properly exercised its inherent judicial authority by seeking a jury determination. *Id.*

■ As in *Shattuck II, Barker, Chauvin,* and *Kendell,* the issues before us are whether the district court possessed the inherent judicial authority to impanel a sentencing jury on remand from our reversal of Boehl's unconstitutional sentence and, if so, whether it could have properly exercised that authority under the circumstances presented. But the facts presented here are sufficiently distinguishable to preclude us from squarely applying any of these precedents.

When the state moved to impanel a resentencing jury on remand from our reversal of Boehl's sentence, the legislature had amended aspects of the Minnesota sentencing scheme in response to *Blakely.* For example, the legislature had amended the patterned-sex-offender statute to require the "fact finder," rather than the district court, to make findings regarding the requisite aggravating factors. *See* Minn.Stat. § 609.108, subd. 1 (Supp.2005) (requiring fact finder to find that offender is danger to public safety and needs treatment or supervision beyond presumptive term and supervised-release period). This amendment, however, applies only to offenders who committed their offenses on or after August 1, 2005. 2005 Minn. Laws ch. 136, art. 2, § 6, at 923. Because this effective date left the district court without *statutory* authority to impanel a resentencing jury for Boehl's offenses, which were committed in 1996, we consider whether the district court could have properly exercised its *inherent judicial* authority to impanel a resentencing jury. In doing so, we

consider whether impaneling a resentencing jury was "(1) necessary (2) to achieve a unique judicial function (3) without infringing on equally important legislative or executive functions." *Chauvin,* 723 N.W.2d at 24.

## A.

As in *Chauvin,* the legislature did not provide the district court with a constitutional mechanism to effectuate the enhanced sentence mandated by Minn.Stat. § 609.1352, subd. 1 (1996). Nor had the legislature provided guidance on how to proceed without such a mechanism. We, therefore, hold that the use of a sentencing or resentencing jury for those offenders who committed their offenses before August 1, 2005, is necessary to vindicate the Sixth Amendment rights of those offenders and to carry out the sentencing-enhancement scheme that the legislature mandated in Minn.Stat. § 609.1352, subd. 1 (1996).

## B.

The use of a resentencing jury to make factual findings in cases such as this rests within the judiciary's unique functions because, as the *Chauvin* court observed, it is the "historical and constitutional function of the judiciary to safeguard the rights of criminal defendants by providing for a jury trial *where the statutory scheme is silent on the issue.*" *Id.* at 26–27 (emphasis added). Boehl argues that the patterned-sex-offender statutory scheme is no longer silent after the enactment of the 2005 amendment. We disagree. The 1996 version of the patterned-sex-offender statute *requires* the district court to sentence Boehl to an enhanced sentence *if the dis-*trict court finds that certain aggravating factors are present. But the legislature has remained silent regarding how a district court may fulfill this statutory mandate in a constitutional manner because it has not provided guidance as to the proper sentencing procedure for patterned sex offenders who committed their offenses before August 1, 2005, but are sentenced after the *Blakely* decision. Absent such guidance, impaneling a resentencing jury to effectuate the legislature's intent falls within the judiciary's unique functions while safeguarding Boehl's Sixth Amendment rights.[3]

## C.

Finally, we consider whether, under these circumstances, impaneling a resentencing jury would infringe on the legislative function of creating a sentencing scheme that comports with the United States Constitution. This presents a question of comity. In *Chauvin,* the supreme court noted that it had declined to exercise its inherent judicial authority in *Shattuck II* and *Barker* "out of deference to the legislature" because, in *Shattuck II,* "the legislature had already provided for the remedy the state was requesting," namely, the "authority to impanel a sentencing jury on remand of an unconstitutional sentence," and, in *Barker,* "the legislature had already omitted the specific mandatory minimum statute at issue from the [legislative] authorization to use sentencing juries on resentencing." *Chauvin,* 723 N.W.2d at 28 (citing *Barker,* 705 N.W.2d at 775–76; *Shattuck II,* 704 N.W.2d at 148). The supreme court observed that the policy decision "to decline on comity grounds to

---

**3.** Our analysis applies with equal force to impaneling a sentencing jury for offenders who committed their offenses before August 1, 2005, but because of delayed disclosure or other reasons are sentenced after the *Blakely* decision.

exercise ... inherent judicial authority to impanel sentencing juries[ ] could be extended to cases such as Chauvin's," in which the district court impaneled a sentencing jury before the 2005 amendments were enacted. Id. But instead the *Chauvin* court concluded that the exercise of inherent judicial authority was appropriate. *Id.* at 29. In doing so, the supreme court distinguished Chauvin's case from *Shattuck II* and *Barker* because "there was no lawful legislative fact finding procedure to which the [district] court could have given deference" when Chauvin was sentenced. *Id.*

We conclude that the circumstances presented here are more akin to those in *Chauvin* than to those in *Shattuck II* and *Barker*. As in *Chauvin*, when Boehl was resentenced, there was no legislatively mandated, constitutionally sound fact-finding procedure in effect; the 2005 amendment to the patterned-sex-offender statute did not apply to Boehl, who committed his offense before August 1, 2005. Unlike in *Shattuck II*, where "the legislature had already provided for the remedy the state was requesting," namely, the "authority to impanel a sentencing jury on remand of an unconstitutional sentence," *Chauvin*, 723 N.W.2d at 28 (citing *Shattuck II*, 704 N.W.2d at 148), when Boehl was resentenced, the legislature had *not* enacted the procedural remedy the state was request-

ing. Rather, it had limited the application of the 2005 amendment to the patterned-sex-offender statute to sex offenders who committed their offenses on or after August 1, 2005. And, unlike the facts in *Barker*, the legislature *did* include the patterned-sex-offender statute in the legislative authorization to use sentencing juries on resentencing. Minn.Stat. § 244.10, subd. 5(a) (2006).[4] Because there is not a constitutionally sound mechanism for sentencing enhancement under the patterned-sex-offender statute applicable to Boehl to which courts may defer, comity did not prevent the district court from exercising its inherent judicial authority to impanel a resentencing jury on remand.

Our conclusion is buttressed by the legislature's clear intent that offenders receive enhanced sentences when appropriate using constitutionally sound sentencing procedures, which we glean both from recently enacted statutes and from legislative history. The legislature's 2005 amendment to the patterned-sex-offender statute demonstrates that the legislative policy favoring enhanced sentences for patterned sex offenders is unabated. The 2005 amendment also expresses the legislature's intent that those enhanced sentences be imposed without offending constitutional guarantees by remedying the constitutional deficiency in the patterned-sex-offender statute.[5] This intent also is

---

4. This statute now provides:

   When the prosecutor provides reasonable notice under subdivision 4, the district court *shall allow* the state to prove beyond a reasonable doubt to a jury of 12 members the factors in support of the state's request for an aggravated departure from the Sentencing Guidelines or the state's request for an aggravated sentence under *any sentencing enhancement statute* or the state's request for a mandatory minimum under section 609.11....

Minn.Stat. § 244.10, subd. 5(a) (2006) (emphasis added). This amendment applies to sentencing hearings, resentencing hearings, and sentencing departures sought on or after June 2, 2006. 2006 Minn. Laws ch. 260, at 829.

5. The legislative policy favoring enhanced sentences when appropriate also is evident in the amendments to similar sentencing-enhancement statutes. *See, e.g.,* Minn.Stat. §§ 609.109, subd. 4 (repeat sex offender),

evident in the 2006 amendment to Minn. Stat. § 244.10, subd. 5(a) (2006), which requires the district court to impanel a sentencing or resentencing jury that will determine whether the aggravating factors listed in a sentencing-enhancement statute are present.

Relevant legislative history also supports our conclusion that the district court was not precluded by principles of comity from exercising its inherent judicial authority to impanel a resentencing jury on remand.[6] Legislative history makes evident that the 2005 amendments to the sex-offender statutes would not have been limited to offenses committed on or after August 1, 2005, but for the legislature's concern that broader application would violate the Ex Post Facto Clause, U.S. Const. art. I, § 9, Minn. Const. art. I, § 11. *See* Hearing on S.F. No. 1875 Before the Senate Comm. on Crime Prevention & Pub. Safety (Mar. 31, 2005) (statement of Sen. Skoglund). The Minnesota Supreme Court's recent decision, *Hankerson v. State*, demonstrates that the legislature's ex post facto concerns were unfounded. 723 N.W.2d 232, 242 (Minn.2006). The *Hankerson* court held that the 2005 amendment to Minn.Stat. § 244.10, subd. 5(a), which changed the identity of the fact finder, does not violate the Ex Post Facto Clause because that change is merely procedural. *Id.* The *Hankerson* court also held that, even if a law is not merely procedural, it is not a prohibited ex post facto law when it vindicates, rather than burdens, a defendant's rights. *Id.*

Similarly, the 2005 amendment to the patterned-sex-offender statute is merely procedural; it simply changes the identity of the fact finder from the "[district] court" to the "fact finder." Moreover, the 2005 amendment does not disadvantage Boehl. Rather, it vindicates his Sixth Amendment right to a jury determination on aggravating factors. Therefore, the legislature could have made the 2005 amendment to the patterned-sex-offender statute applicable to sentences imposed after its enactment regardless of the date of the underlying offense, without running afoul of the Ex Post Facto Clause.

In sum, because the legislature has not provided a district court with a constitutional mechanism by which to effectuate its intent to impose enhanced sentences for patterned sex offenders who committed their offenses before August 1, 2005, or legislative guidance as to how a district court should proceed absent such a mechanism, and because recent legislative enactments and legislative history reiterate the legislature's intent that district courts use constitutional procedures to impose en-

---

609.1095, subd. 2 (dangerous-offender statute) (Supp.2005).

6. Boehl argues that it is improper for us to consider legislative history because the plain language of the 2005 amendment to the patterned-sex-offender statute unambiguously establishes that a district court may impanel sentencing juries *only* for those defendants who committed offenses on or after August 1, 2005. But as addressed above, this amendment does not change the fact that the legislature has remained silent regarding the proper mechanism by which a district court may sentence offenders who committed their offenses before August 1, 2005, to the enhanced sentence mandated by the prior versions of the patterned-sex-offender statute. Moreover, were we to adopt Boehl's suggestion that the plain language of the 2005 amendment to the patterned-sex-offender statute is clear and unambiguous as it relates to Boehl, we conclude that such language could be disregarded because it "utterly confounds [the] clear legislative purpose." *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 639 (Minn.2006) (quotation omitted).

hanced sentences on such offenders when appropriate, we conclude that impaneling a resentencing jury to make the requisite findings set forth in the 1996 version of the patterned-sex-offender statute does not offend principles of comity or infringe on the legislative function of creating a sentencing-enhancement scheme.

Impaneling a resentencing jury on remand from our reversal of Boehl's sentence was necessary to achieve a unique judicial function without infringing on equally important legislative or executive functions. Therefore, the district court could have properly exercised its inherent judicial authority to impanel a resentencing jury.

## II.

In those cases in which the supreme court has concluded that a district court may properly exercise its inherent judicial authority to impanel a sentencing or resentencing jury, the supreme court has not compelled the district court to do so. Far from mandating the exercise of inherent judicial authority in other contexts, the supreme court has recognized the discretionary nature of this decision, *see, e.g., State v. Hart*, 723 N.W.2d 254, 259–60 (Minn.2006) (reviewing for abuse of discretion district court's decision to use its statutory and inherent judicial authority to dismiss complaint in interests of justice), and has admonished district courts to proceed cautiously when exercising that authority so as to "respect the equally unique authority of the executive and legislative branches of government over their constitutionally authorized functions," *State v. C.A.*, 304 N.W.2d 353, 359 (Minn.1981). As addressed in section I, this admonition applies with equal force when a district court considers whether to exercise its inherent judicial authority to impanel a sentencing or resentencing jury.

Here, rather than using its discretion and declining to exercise its inherent judicial authority to impanel a resentencing jury, the district court failed to recognize that it possessed such authority. In light of this error, we remand to the district court to determine whether to exercise its inherent judicial authority to impanel a resentencing jury to determine whether the factors exist for imposing an enhanced sentence under the patterned-sex-offender statute.

## DECISION

The district court possessed the inherent judicial authority to impanel a resentencing jury on remand from our reversal of respondent's enhanced sentence, which had been imposed in violation of the Sixth Amendment. Principles of necessity and comity did not preclude the district court from exercising its inherent judicial authority to achieve this unique judicial function. Because the district court erred by failing to recognize that it possessed this inherent judicial authority, we reverse and remand for the district court's discretionary determination of whether to exercise that authority.

**Reversed and remanded.**