*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0423**

State of Minnesota,
Respondent,

vs.

Ty-Yn Shakhaun Holley,
Appellant.

**Filed August 31, 2015
Affirmed in part, reversed in part, and remanded
Willis, Judge\***

Hennepin County District Court
File No. 27-CR-12-38603

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Stan Keillor, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Willis, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WILLIS**, Judge

Because the district court did not prejudicially err by admitting recordings of statements by a witness who did not testify, and did not plainly err by allowing expert testimony about fingerprint analysis or by instructing the jury on constructive possession of a firearm, we affirm in part. But because the district court erroneously entered a conviction and sentenced appellant for a lesser-included offense, we reverse in part and remand.

## FACTS

On November 20, 2012, the Hennepin County Sheriff's Office executed a search warrant at a home owned by appellant Ty-Yn Shakhaun Holley's grandmother and found marijuana, several loaded guns, more than $5,000 in cash, and a document showing that Holley used the home as his address. At the time, Holley was in the home, along with his girlfriend, B.P., and their two children. The state charged Holley with two counts of fifth-degree controlled-substance crime—for possession and for sale. *See* Minn. Stat. § 152.025, subds. 1(a)(1), 2(a)(1) (2012). The state sought to increase Holley's sentence under the firearm-enhancement statute. *See* Minn. Stat. § 609.11, subd. 5 (2012).

At trial, a police sergeant testified regarding execution of the search warrant and his interview of B.P. after her arrest. Before the sergeant's testimony, the district court instructed the jury that the state would introduce a firearm as evidence and that it was "offered for the purpose of assisting you in determining whether the defendant had actual

possession or constructive possession" of the firearm to determine applicability of the sentencing enhancement.

Later in the sergeant's testimony, the district court admitted into the record, without objection, two audio recordings of the sergeant's interview of B.P. The sergeant testified that B.P. stated that Holley lived with her in his grandmother's home. At the time the recordings were admitted, both the state and the defense planned to call B.P. as a witness. Ultimately, B.P. exercised her privilege against self-incrimination and did not testify. The district court thereafter permitted the state to recall the sergeant and play the recordings for the jury.

In addition, a forensic scientist testified as an expert in the identification of latent fingerprints. She gave a detailed explanation of the procedure used and the many factors that could affect the identification of a particular print. When defense counsel asked during cross-examination if the process was subjective or exact, the expert testified that she "wouldn't say that it was a subjective process" and that "[i]t is a scientific method that we use for the examination of fingerprints." When asked about the methodology's error rate, she testified that she did not know the rate but that she has "never made a misidentification or exclusion." Defense counsel did not object to either of her statements.

At the end of the trial, the district court instructed the jury that it would be asked whether Holley possessed a firearm. The district court explained that the jury could find that Holley constructively possessed the firearm if the firearm was "in reasonable proximity to the defendant or to the drugs" and instructed the jury to consider a number

of factors in deciding whether to infer constructive possession. Defense counsel did not object to the instructions.

The jury returned guilty verdicts on both counts and found that Holley possessed a firearm during commission of the offenses. Before sentencing, Holley moved the district court for a downward departure from the mandatory minimum sentence. The district court found that there were no substantial and compelling reasons for a downward departure and denied the motion. It then entered convictions on both counts and sentenced Holley to 36 months on the possession count and 39 months on the sale count.

## DECISION

### I. The district court did not plainly err by admitting recordings of B.P.'s police interviews because the statements did not affect Holley's substantial rights.

Holley argues that the district court committed plain error by admitting recordings of B.P.'s police interviews, in violation of the Confrontation Clause. At the time that the recordings were admitted into the record, both the state and Holley had B.P. on their witness lists, but B.P. ultimately did not testify because she invoked her Fifth Amendment privilege against self-incrimination. Later, the district court allowed the state to play the recordings for the jury. Holley did not object to the admission or the playing of the recordings.

When an appellant did not object to the admission of evidence at trial, we review for plain error. *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008). To warrant reversal under plain-error review, the appellant must show that: (1) an error occurred, (2) the error was plain, and (3) the error affected his substantial rights. *Id.* An error is plain if it

4

"contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An error affects substantial rights if the error was prejudicial and there "is a reasonable likelihood that the error had a significant effect on the jury's verdict." *State v. Sontoya*, 788 N.W.2d 868, 873 (Minn. 2010) (citing *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998)). If these three prongs are satisfied, we then determine "whether the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding before granting relief." *State v. Hull*, 788 N.W.2d 91, 100 (Minn. 2010) (quotation omitted).

The right to confront witnesses is violated if testimonial hearsay is admitted, unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006) (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004)). The state does not dispute that B.P.'s statements were testimonial hearsay, that B.P. was unavailable at trial, or that Holley did not have an opportunity for cross-examination before the trial. When B.P. invoked her Fifth Amendment right against self-incrimination, the district court could have stricken the recordings as evidence because they had not yet been played for the jury. Instead, the district court permitted the state to recall a witness to play the recordings for the jury and specifically requested that the state re-offer one of the recordings to ensure that it was on the record. Therefore, we conclude that there was an error and it was plain.

The content of the recordings, however, did not affect Holley's substantial rights. The recordings included only a few inculpatory remarks, including (1) that Holley lived

5

at his grandmother's house; (2) that the key to the safe, in which guns and cash were found, belonged to Holley; (3) that B.P. had seen Holley bring a gun into the house; and (4) that Holley gave her the $4,000 that was found in her purse.

The record here includes other testimony that the police had confirmed that Holley was living at his grandmother's home, through "computer intelligence records" and a cell-phone agreement in Holley's name found at the home. But we note that it was unnecessary for the state to prove that Holley lived at the home because Holley admitted that his grandmother owned the home, that he was inside the home at the time of the search, and that he had keys to and regular access to the home. A police officer testified that Holley admitted at the scene that the safe key was his. An expert witness testified that Holley could not be excluded as a contributor of DNA found on several of the guns. And finally, Holley testified that the $4,000 in B.P.'s purse came from his promotional work and that he asked B.P. to deposit it for him. Given that each of B.P.'s statements was corroborated by other significant, admissible evidence or was unnecessary to the outcome of the case, the recordings did not affect Holley's substantial rights because they were unlikely to have had a significant effect on the jury's verdict.

## II.    The district court did not plainly err by allowing the fingerprint expert's testimony because any error was not plain.

Holley argues that the district court erred by allowing the fingerprint-analysis expert to testify that there was no subjective component to latent-print analysis and to state that she had never made a misidentification, which he contends "exaggerated the

6

reliability of her own conclusions." Because Holley did not object at trial, we again review for plain error.

To allow an expert to testify in a "sweeping and unqualified manner" about the certainty of the results established through testing without a cautionary instruction is "technical error." *State v. Spencer*, 298 Minn. 456, 461, 216 N.W.2d 131, 134 (1974) (discussing testimony that test results indicated that the defendant had definitely fired a gun, when the results were merely *consistent with* the defendant firing a gun). But the error is not prejudicial if the expert is subjected to thorough cross-examination, *id.*, or the outcome was supported by extensive and strong evidence, *Hull*, 788 N.W.2d at 104.

The testimony here was not sweeping and unqualified. Holley contends that the expert's testimony was misleading because she testified that she "wouldn't say that [latent-print analysis] was a subjective process." In support, Holley cites *State v. Dixon*, in which the court stated that "there is a subjective component to print analysis." 822 N.W.2d 664, 674 (Minn. 2012) (noting that the "subjective component" does not prevent the analysis from being "reliable or accurate"). But the expert's testimony was given in response to defense counsel's question about her opinion of whether the process was subjective, not whether the Minnesota Supreme Court had ever characterized the process as subjective. Indeed, she later testified that the identification process involved "side by side comparison" to spot similarities and dissimilarities between the latent prints and the exemplars. She also discussed many factors that might affect or impede identification and did not testify that it was "an exact process" when asked by defense counsel.

7

Therefore, there was no plain error because the expert did not make a broad, unqualified statement about the accuracy of latent-print analysis.

Holley also argues that the latent-print expert exaggerated the reliability of her identifications by testifying that she had never misidentified a print. While the statement arguably may have encouraged jurors to give undue weight to her testimony, the potential error was not so obvious that it constitutes plain error. Moreover, Holley does not argue on appeal that the statement was inaccurate. At trial, defense counsel made no attempt to impeach the expert on this ground and presented no evidence about the error rate in latent-print analysis. Furthermore, the testimony aided the defense as well because the expert also testified that the prints that were identified as Holley's could have been on the baggies before drugs were placed in them, supporting Holley's argument that he had touched the bags before they were reused to store marijuana without his knowledge and that several of the prints were identified to another person, who Holley argued was the actual culprit.

### III. The district court did not plainly err in its jury instructions regarding possession of a firearm because any error was cured by the district court's final instructions and because the remaining jury instructions accurately summarized the law and a separate *Blakely* hearing was not required.

Holley argues that the district court made three errors in its jury instructions: (1) when it instructed the jury during testimony that evidence was "being offered for the purpose of assisting you in determining whether the defendant had actual possession or constructive possession" of a firearm for the sentencing enhancement, it implied that possession had been established and the jury was merely to determine the type of

8

possession; (2) when it instructed the jury to consider the *Royster* factors in determining whether Holley possessed a firearm, it asked the jury to reach a legal conclusion instead of a factual finding; and (3) when it instructed the jury on the firearm issue, it "denied [Holley] a separate *Blakely* proceeding on the section 609.11 sentencing enhancement." *See State v. Royster*, 590 N.W.2d 82, 85 (Minn. 1999) (outlining factors courts should consider in determining whether presence of a firearm increased the risk of violence and to what degree).

Because Holley did not object to the jury instructions, we again review for plain error. District courts are allowed "considerable latitude" in the selection of language for jury instructions. *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). But the instructions must "fairly and adequately explain the law of the case." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011). "An instruction is in error if it materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001).

First, Holley argues that the jury instruction given during testimony implied that the jury was only to decide between actual or constructive firearm possession for the sentencing enhancement. That argument fails. We must consider the jury instructions as a whole. *State v. Peou*, 579 N.W.2d 471, 475 (Minn. 1998). The district court clarified its earlier instruction, given during testimony, by providing a more detailed final instruction. The final instruction asked the jury to answer the question: "[W]as the defendant in possession of a firearm?" The instruction then explained "that possession may be actual or constructive." Reviewing the instructions together, any potential error in the earlier instruction was cured by the later clarification.

Second, Holley argues that the instruction, based on CRIMJIG 20.57, asked the jury to reach a legal conclusion by telling jurors to consider the *Royster* factors to determine whether constructive firearm possession existed. *See* 10A *Minnesota Practice*, CRIMJIG 20.57 (2014). In *State v. Royster*, the supreme court held that the sentencing court should consider circumstances surrounding constructive possession to determine whether the predicate offense should trigger a sentencing enhancement. 590 N.W.2d at 85. Although *Royster* did not hold that the factors must be considered in making a factual finding on whether constructive possession existed, Minnesota courts have since used the factors for that purpose. *See State v. Barker*, 705 N.W.2d 768, 771 (Minn. 2005). The instruction, therefore, accurately summarized the law.

Finally, Holley argues that the instructions denied him a bifurcated trial, which is mandated for sentencing-enhancement issues when the evidence may unduly prejudice the jury in its determination of guilt. This argument fails because Holley did not request a bifurcated trial, and a bifurcated trial is mandated only when the evidence in support of the sentencing enhancement is "otherwise inadmissible at a trial on the elements of the offense" and "would result in unfair prejudice to the defendant." Minn. Stat. § 244.10, subd. 5(c) (2012). The gun-possession evidence here was admissible and would not result in unfair prejudice because the presence of guns is relevant to the issue of whether Holley possessed controlled substances for a purpose other than personal use, such as for sale. *See State v. Love*, 301 Minn. 484, 484-85, 221 N.W.2d 131, 132 (1974) (stating that the fact that the defendant was armed was relevant in determining if the defendant

10

possessed methamphetamine with an intent to distribute). The district court therefore did not plainly err in its jury instructions.

**IV.    The district court did not abuse its discretion by denying Holley's motion to sentence without regard to the mandatory minimum when it found that there were no substantial and compelling reasons for a downward departure.**

Holley argues that the district court abused its discretion by denying his motion to sentence without regard to the mandatory minimum under the firearm-enhancement provision of Minn. Stat. § 609.11, subd. 5(a) (2012). "Sentencing rests within the broad discretion of the [district] court and will not be disturbed on appeal absent an abuse of that discretion." *State v. Larson*, 473 N.W.2d 907, 908 (Minn. App. 1991).

Holley cites *State v. Svec* to argue that there is "tension between *Barker*'s treatment of section 609.11 . . . as an upward departure and that statute's treatment of the failure to impose the mandatory minimum as a downward departure." No. A10-602, 2011 WL 691644, at *6 (Minn. App. Mar. 1, 2011) (noting that *Barker* requires a jury to find that a sentencing factor exists before a district court may make a discretionary departure based on the factor). *Svec* is, however, unpublished and thus lacks precedential value. *See* Minn. Stat. § 480A.08, subd. 3(b) (2014). In any event, *Svec* makes clear that "[a] sentence under section 609.11, subd. 5(a), is treated as a departure *for Blakely purposes*" only, so that the defendant has a right to require that a jury find that he possessed or used a firearm at the time of the underlying offense. *Id.* (emphasis added). But because the enhancement "is automatic" upon such a finding, there must be "substantial and compelling reasons" to sentence without regard to the mandatory minimum. *Id.* There appears to be no conflict between the application of *Blakely* and the

11

need for substantial and compelling reasons to deviate from the automatic enhancement upon the jury's factual finding on the firearm-possession issue.

Holley also argues that evidence was inconclusive that the presence of a firearm increased the risk of violence associated with the offenses and that there was a general lack of evidence that the guns were actually his. This argument fails because it asks us to disregard the jury's explicit factual finding, which is supported by the record, that Holley possessed a firearm at the time of the offenses. Because the district court determined that no substantial and compelling reasons exist here to depart from the mandatory minimum sentence, it did not abuse its discretion by denying Holley's motion to sentence without regard to the mandatory minimum.

**V.    The district court erroneously convicted and sentenced Holley on the controlled-substance possession charge, which was an included offense of the controlled-substance sale charge.**

Holley next argues that the district court erred by convicting him of both counts of fifth-degree controlled-substance crime, for sale and for possession, when possession is included in the sale offense. At oral argument, the state conceded that the possession offense was a lesser-included offense of the sale under Minn. Stat. § 609.04, subd. 1 (2014), and that the district court erred in convicting and sentencing Holley on the possession charge. *See, e.g.*, *State v. Traxler*, 583 N.W.2d 556, 562 (Minn. 1998) (referring to a possession charge as a lesser-included offense of a sale charge). We agree and thus reverse Holley's possession conviction and remand for resentencing. If the sale conviction were to be vacated or reversed on independent grounds, the district court would be permitted to formally adjudicate and sentence Holley on the possession count.

*See State v. Grampre*, 766 N.W.2d 347, 354 (Minn. App. 2009), *review denied* (Minn. Aug. 26, 2009).

**Affirmed in part, reversed in part, and remanded.**